WILLIAM P. SULLINGS & another *vs.* MARY C. SULLINGS.

By an ante-nuptial agreement, a man agreed to procure and convey certain bank shares, and, in the event of the marriage and the continuance in life of the parties for five years thereafter, to pay two hundred dollars a year, all to be held in trust for the benefit of his intended wife, provided he should die in her lifetime; and she agreed to accept the provisions so " undertaken to be made for her comfortable maintenance and support, when the same are duly and legally made, so as to become valid and obligatory," in lieu of dower, and as a bar to every other claim by her upon his estate after his death. The parties married and lived together over fifteen years, when the man died. The bank stock was not transferred to the trustee until nearly four years after the marriage, and none of the payments of money were made during his life, and no reason was shown for the delay. Under these circumstances, the court refused to compel the widow specifically to perform her agreement.

BILL IN EQUITY brought by the executors of the will of Hervey Sullings against his widow, to enforce specific performance of an ante-nuptial agreement entered into between the testator and the defendant, which recited that it was the desire and purpose of said Sullings, in the event of the marriage and his decease subsequent thereto, she surviving him, that meet and suitable provision should be made for her comfortable maintenance, as far as might be beyond the casualties and contingencies to which men and business are exposed, and providing that he should procure and convey certain bank shares, and, in the event of the marriage and the continuance in life of the parties for five years thereafter, to pay two hundred dollars a year, all to be held in trust for her benefit, provided he should die in her lifetime ; and that she should accept the provisions so " undertaken to be made for her comfortable maintenance and support, when the same are duly and legally made, so as to become valid and obligatory," in lieu of dower, and as a bar to every other claim by her upon his estate after her death. The material portions of this agreement are copied at length in 5 Allen, 188, 189, *note*

It appeared from the evidence that the parties were married in July 1844 ; that the testator died in 1859 ; that the defendant duly demanded to have her dower set out to her; that the bank stock provided for in the agreement was not transferred to the trustee until June 1848, and that the payments of two hundred

dollars a year were not made during the lifetime of the husband. There was evidence, also, which the plaintiffs contended was sufficient to show that the defendant had waived her right to treat the ante-nuptial agreement as having been violated by her husband.

The case was reserved by *Chapman*, J. for the consideration of the whole court.

*B. F. Thomas & W. W. Crapo*, for the plaintiffs. When the marriage took place the provisions of this contract were duly and legally made, so as to become valid and obligatory. The marriage was the consideration, and the contract was not discharged by it even at law. It then became legally complete. It could have been enforced by Mrs. Sullings or the trustee in a court of equity. *Ayer* v. *Ayer*, 16 Pick. 327. *Miller* v. *Goodwin*, 8 Gray, 542. *Elibank* v. *Montolieu*, 5 Ves. 737. As to the effect of the " provisions duly and legally made so as to become obligatory," the language of the contract is clear and explicit. The defendant covenanted and agreed to accept of them in the place of, and as a substitute for, dower or thirds. They are " to be a bar and estoppel to any and every other claim by her made upon the estate of said Sullings, consequent upon said marriage and her surviving him." There can be no doubt of the intent of the parties. Such a contract, with the performance so secured, constituted a full bar to the claim for a distributive share of the personal estate. The authorities upon this point are conclusive. *Gurly* v. *Gurly*, 8 Clark & Fin. 742. *Buckinghamshire* v. *Drury*, 2 Eden R. 60, reversing *Drury* v. *Drury*, Ib. 39. *Dyke* v. *Rendall*, 2 DeG., Macn. & Gord. 209. *Vincent* v. *Spooner*, 2 Cush. 467, 474, 475. *Miller* v. *Goodwin*, 8 Gray, 542. *Neves* v. *Scott*, 9 How. 196. The *St.* of 1854, *c.* 406, § 5, has no effect upon this contract. It does not limit the power of the husband to affect the share to which the wife is entitled under the statute of distributions, by an ante-nuptial contract. The contract anticipates and covers any change that might be made in the laws. By the word " thirds " would be understood the widow's interest in case of an intestacy. *Druce* v. *Davidson*, 6 Ves. 385, 394. 2 Williams on Executors, (4th Amer. ed.) 1278

The contract conflicts with no policy of the law. There was a substantial performance of it on the part of the husband. *Gartleshore* v. *Chalie*, 10 Ves. 1. If there was any defect or delay in the execution of the agreement, it was waived by the defendant. The contract has been performed by the husband and his representatives, and the defendant has got what she agreed to receive.

*T. D. Eliot & T. M. Stetson*, for the defendant. The contract was executory and to be performed by the testator during coverture, and was therefore rescinded by marriage. After the contract was made, *St.* 1854, *c.* 406, was passed, which gave the defendant a new title. The agreement does not undertake to bar the defendant's claim for her distributive share. Till 1854 she had nothing to bar or release. This change of circumstances makes the agreement peculiarly hard for the defendant. The broader clause of release is satisfied by applying it to the widow's allowance, just then created. The right of dower and to a distributive share stand on different grounds. The testator failed to perform his duties under the contract. All he did during the fifteen years' coverture was the first transfer of fifty shares, and that only after a delay of four years, exposing her all this time "to the contingencies and casualties to which men and business are exposed," and against which it was the express object of the instrument to guard. It is an obvious principle, both of law and equity, that no one can seek performance without having performed his part. The plaintiff must come with perfect propriety on his part. He must be in no default. The delay must not be wilful, and he must show excuse for it. *Kendall* v. *Almy*, 2 Sumner, 278. *Boone* v. *Missouri Iron Co.* 17 How. 340. *Harnett* v. *Yeilding*, 2 Sch. & Lef. 552. *Colson* v. *Thompson*, 2 Wheat. 336. Story on Eq. §§ 771, 776. *Harrington* v. *Wheeler*, 4 Ves. 686. *Lloyd* v. *Collett*, 4 Bro. C. C. 469. *Cathcart* v. *Robinson*, 5 Pet. 264. *Hill* v. *Barclay*, 18 Ves. 63. The expression that "time is not important in equity" never had any general application, and was so held only in regard to contracts of sale, and is repudiated in *Alley* v *Deschamps*, 13 Ves. 228; *Brashier* v. *Gratz*, 6 Wheat. 528; and

*Holt* v. *Rogers*, 8 Pet. 420. The nature of the case makes the time lost here material. Equity never undertook to relieve against a party's own fault, but in cases of short lapses of time, attributable to accident and mistake, in the nature of an outside agency, did so. After his death it was too late to create the fund ; her right to a distributive share had vested. She stood as an owner of the property as fully as the others. The breach of the contract on his part has not been waived.

HOAR, J. The general proposition, that in a proper case, where equity requires it, this court will give effect as a court of equity to an ante-nuptial contract by which a woman, in contemplation of marriage, for a valuable consideration agrees to relinquish her distributive share of her intended husband's estate if she survives him, was intimated in the former suit between the parties, and has since been expressly affirmed. *Sullings* v. *Richmond*, 5 Allen, 187. *Tarbell* v. *Tarbell*, Suffolk, March 1865.

But we are now met by the objection on the part of the defendant, that it would be inequitable to compel a specific performance of the contract by her, because there was a failure to perform it on the part of her husband. The contract contains a recital that it is made with the desire and purpose that suitable provision should be made for the comfortable maintenance of the wife, " as far as may be beyond the casualties and contingencies to which men and business are exposed ; " and provides that the husband shall procure as soon as is practicable fifty shares of bank stock of the New Bedford banks, and immediately convey them to a trustee, in trust to pay the income to the husband during his life, and afterward for the benefit of the wife. It also provides that if the parties shall live for five years after marriage, the husband shall annually thereafter pay to the trustee $200, during their joint lives, to be held and disposed of in the same manner as the bank stock. It appears that the fifty shares of bank stock were not conveyed to the trustee for nearly four years after the marriage, and that the payments of $200 a year were not made during the lifetime of the husband; and no sufficient reason or excuse for the omission appears in evidence.

The bill, therefore, seeks to enforce the performance by one party, of a contract which has been broken by the other. And the first ground taken in support of the plaintiffs' claim is, that the contract became valid and obligatory upon the parties when the marriage took place; that the covenants of the husband, which were all executory, and not the performance of them, were the consideration for the wife's agreement. We do not think the terms or the intent of the contract will admit of such a construction. The declared intent was to secure a mainten-ance for the wife " beyond the casualties and contingencies to which men and business are exposed." Only the punctual per-formance of the stipulations in her favor could give the security against those casualties and contingencies to which she was entitled. The language of her covenant is, " to accept the provisions herein undertaken to be made for her comfortable maintenance and support, when the same are duly and legally made, so as to become valid and obligatory, in the place of and as a substitute for dower or thirds," &c. It is the provisions undertaken to be made, when duly and legally made, that she is to accept, and not the undertaking to make them; and it is when duly made, that is, made according to the terms of the agreement, so as to give her during her whole coverture the security promised, that her contract to accept them becomes binding. It is no answer to say that equity would have com-pelled the husband to execute his covenants. She did not seek its aid. The question is, will equity compel her to adhere to a contract which has been broken by the other contracting party?

It is then argued that time was not of the essence of the hus-band's contract; that it has been substantially performed by him and his representatives; and that the delay in its performance did not prejudice her rights, or subject her to loss or danger of loss. But the court are of opinion that a delay for such a length of time, not accounted for on any ground of accident or mistake, was material to the rights of the defendant. The essence of the contract was, that certain amounts of property should be irre-vocably devoted to her use, at times specifically designated, so as to guard them against accidents to her husband's fortune.

She was subject to the danger of loss to some extent during the whole coverture; and for nearly four years had no security whatever. It was too late to attempt to create the fund after his death, and when her legal right to a share in his estate had become vested. True, she could now receive the whole amount to which she would have been entitled, if the contract had been performed; but she has been exposed to the whole risk which the contract was framed to avoid; and it is for her to elect whether she will now accept performance.

Nor is the evidence sufficient to show a waiver on her part of her right of election to treat the contract as violated and abandoned. The testimony is slightly conflicting, but we think the weight of it is in favor of the conclusion that she has not, at any time since her husband's death, intended to surrender any rights in his estate which she was aware that she possessed, or acted in such a manner as reasonably to induce the belief on the part of the plaintiffs that she had such an intention.

*Bill dismissed, with costs.*