# CHARLESTON.

B. D. GIBSON *et al.* ADMRS., ETC., *v.* JOHN O. AGLIONBY *et al.*

Submitted September 22, 1920. Decided October 5, 1920.

1. MORTGAGE—*Trustee in Deed of Trust and Beneficiary Therein Held Not Liable to Debtor for Rent.*

   Where a debtor, to secure his creditor, executes a deed of trust conveying certain of his real estate to a trustee, and therein authorizes and empowers said trustee to take over

the said real estate and lease the same if in his opinion it is necessary to do so, neither the said trustee nor the beneficiary in said deed of trust will be liable for the rents, issues and profits of said real estate, where the trustee did not take over and lease the same under the power given in the deed of trust, especially if the owner thereof retained the possession and control, and received the benefits arising therefrom. (p. 93).

2. PLEDGES—*Creditor, Taking Assignment as Security Held Liable for · Want of Due Diligence; Creditor Taking Assignment and Releasing to Debtor Held Not Liable for Failure to Collect.*

Where choses in action are assigned by a debtor to his creditor as collateral security for a debt, such creditor will be liable for any loss sustained by reason of his failure to use due diligence in the collection of such choses in action, but where the debtor has knowledge that the same have not been collected, and that the creditor has abandond all efforts to collect the same because of the refusal of the parties liable thereon to pay the same, upon the ground that they do not owe any part thereof, and the failure of his debtor to furnish any definite data or information upon which suit could be brought to collect the same, thereby releasing the same to his assignor, and the said parties so claimed to be liable upon said choses in action remain solvent, such debtor cannot charge his creditor with any amount because of failure to collect such accounts. (p. 93).

3. SAME—*Debtor Making Assignment Not Entitled to Credit, Unless Creditor's Negligence in Collecting Causes Loss.*

Before a debtor, who has assigned choses in action to his creditor to secure a debt, will be entitled to a credit upon such debt for failure of his creditor to use due diligence in the collection of such choses in action, he must show that he has suffered a loss and the extent thereof. (p. 93).

(WILLIAMS, PRESIDENT, absent.)

Appeal from Circuit Court, Jefferson County.

Suit by B. D. Gibson and others, administrators of William A. Morgan, deceased, against John O. Aglionby and another. Decree for defendant named, and plaintiffs appeal.

*Reversed; decree for plaintiff.*

*James M. Mason, Jr.,* and *C. N. Campbell,* for appellants. *Brown & Brown,* for appellee.

RITZ, JUDGE:

At the time of the death of plaintiffs' intestate, William A. Morgan, in February, 1899, the defendant Aglionby was indebted to the said Morgan in the sum of $1033.00, and on the first day of March of that year, in settlement of said indebtedness, executed to the plaintiffs his three notes, one for $300.00, payable Nov. 1, 1899, another for $300.00, payable Nov. 1, 1900, and the other for $433.00, payable Oct. 1, 1901, all bearing interest from date. To secure the payment of these notes, on the 10th of May, 1899, he executed, acknowledged and delivered a deed of trust conveying to the defendant A. S. Morgan, trustee, two tracts of land situate in Jefferson county, one of which tracts was made up of two adjoining tracts, for which reason they are sometimes referred to as three farms. The deed of trust further transfers, sets over and assigns unto the trustee the rents to become due and payable from the tenants of said Aglionby upon said farms, and further authorizes and empowers the said trustee, if he deems it necessary, to take possession of the said farms and lease the same out for the benefit of the trust. At the time of the execution of this paper there were upon the farms three tenants to whom the defendant Aglionby had theretofore rented them, and Aglionby executed and delivered a direction in writing to two of these tenants to pay over the rents to the plaintiffs. As to the third, it appears that he subsequently made a settlement with him himself, and received his bond for the rent due, and turned this bond over to the plaintiffs. The leases of these tenants expired on the first of April, 1900. The plaintiffs collected from one of the tenants, who was directed to pay the rent to them, the sum of fifty dollars, and from the other the sum of twenty-five dollars, which was duly credited upon Aglionby's obligations. Aglionby made a settlement with the third tenant and took from him his bond for two hundred and seventy-five dollars, which he turned over to the plaintiffs. Upon this bond one hundred and fifty dollars was collected and credited upon said obligations. The obligor then made an assignment for the benefit of his creditors, and only the sum of about twenty-five dollars was real-

ized upon the remainder of the bond, which was duly credited upon the indebtedness. This was all of the money actually received by the plaintiffs from the lease of the farms. Aglionby, however, from other sources paid on account of the indebtedness represented by said notes, on December 12, 1901, the sum of $229.65, and on April 28, 1903, the further sum of $100.00. In 1903 Aglionby raised a contention as to the credit to which he was entitled because of the rents collected, or which should have been collected, as he contended, from the farms, and the parties being unable to agree, submitted the matter to arbitration. The arbitration agreement was reduced to writing, each party selecting an arbitrator, and the same was filed in the circuit court, so that the award of said arbitrators, when made, might be entered as a judgment of that court, and made binding upon all of the parties. Pursuant to this agreement of arbitration the arbitrators met at Shepherdstown and heard part of the evidence offered by Aglionby in support of his contention that plaintiffs should allow him more than the amounts above mentioned as credits upon said notes. The parties, it seems, without completing the testimony, separated, and for some reason the arbitrators never again met for the purpose of concluding their work under the agreement of submission, Aglionby contending that he was unable to get the plaintiffs to go on with the arbitration agreement, and the plaintiffs contending that they were unable to get Aglionby to proceed therewith. As to what the truth is in this connection, it is difficult to tell from the evidence, nor do we consider it very material. Sometime thereafter the arbitrator selected by the plaintiffs died, and upon motion in the circuit court they had another arbitrator substituted in his stead, but still no meeting of the arbitrators was arranged, and no hearing of the matters in dispute had before them. In fact, at the time of the bringing of this suit, both of the arbitrators were dead, and no steps had been taken by Aglionby to have the amount to which he was entitled as a credit determined by said arbitrators. Plaintiffs thereupon brought this suit to January Rules, 1917, for the purpose of having set aside the order of submission and having the court

settle the status of affairs between the parties so that the trustee could proceed with the execution of the deed of trust, to the end that any balance found to be due them might be satisfied.

Aglionby's contention is that the plaintiffs are liable for the rents which should have been collected from his farms for three years. The deed of trust does not place any such limitation upon the powers of the trustee, but he argues that because the last of the notes would be due within that time the inference is that the power of the trustee to take possession of the farms and rent them would then end. He insists that the plaintiffs should credit him with the amount of rents due from his tenants for the year ending April, 1900, and should be charged with the rental value of the farms for the two years ending April, 1902, and that if this is done not only will the indebtedness be discharged, but he will have very much over paid the same. The plaintiffs insist upon the other hand that they are not properly chargeable with any monies other than those actually received by them as above indicated; that while the deed of trust assigned to the trustee for their benefit the rents due, or to become due, from Aglionby's tenants, they were unable to collect more than they did collect because of Aglionby's defaults or failures to properly assist them in the collection; and that they are not liable for the rental value of the farms for the other two years, for the reason that neither they nor the trustee ever exercised the power given by the deed of trust to take possession of them and lease them, and their liability in this regard would only exist in case they exercised this power. The court below sustained Aglionby's contention, and canceled the notes and directed the execution of a release of the deed of trust.

That neither the plaintiffs nor the trustee in the deed of trust took charge of the farms and leased them is not denied, but Aglionby's insistence is that they should have done so, and he contends that he lost the use of the farms for these two years, and whether the plaintiffs got the benefits or not, they must be held to answer to him for their rental value. The plaintiffs not only contend that they did not take possession of the farms and lease the same for these two years, as they had the power to do, but

that Aglionby himself rented and leased one of the farms for these two years, and received the rent, and used the other for pasturing cattle. This Aglionby denies. That he did rent one of these farms to a man by the name of Johnson for these two years is proved by evidence so convicing that Aglionby's denial cannot be considered as overcoming it. The plaintiff Getzendanner swears that Johnson occupied one of the farms during these two years. This fact Aglionby does not deny, but he says that Johnson was not his tenant. Johnson says that he rented the farm from Aglionby, and that he paid him the rent therefor, and in support of this says that he gave Aglionby a note for $155.00 for part of the rent which Mr. Aglionby discounted at a bank, and which he, Johnson, subsequently paid off after renewing it and curtailing it a number of times. The records of the bank are appealed to and they corroborate Johnson in this regard. Aglionby's counsel suggest that this may have been a note which Aglionby endorsed for the accommodation of Johnson, and not a note given to him for rent, and they argue that this appears from the fact that Johnson paid the note. The fact that Johnson paid the note proves nothing, for if it was a debt he owed Aglionby for rent, it was his duty to pay it, and the explanation that Aglionby may have endorsed it for Johnson's accommodation, it is pertinent to remark, is made by his counsel, and not by himself. The proof is equally strong that Aglionby actually did pasture his cattle on the other farm, or at least a large part of it, during these two years, and that the principal residence on this farm was occupied by a man to whom Aglionby had rented it, so that it appears from the evidence that not only did the trustee not exercise the power given him to take over these farms and lease them, but Aglionby had himself leased one of them and used the other for his own benefit. The trustee was under no obligation to exercise this power given him in the deed of trust. If he considered the security ample without exercising that power he could do so, and certainly Aglionby cannot complain when the failure to exercise the power upon the part of the trustee inured to his own advantage, or to put it in the most favorable light to him, caused him no injury.

Is the defendant Aglionby entitled to any credit upon account

of the rent due, or to become due, from the tenants upon the farms at the time the deed of trust was executed, and which was assigned to the plaintiffs? To two of these tenants, as before stated, he gave written directions to pay the rents to the plaintiffs. The plaintiff Getzendanner shows that he repeatedly called upon these parties to pay the rent; that one of them contended that he did not owe Aglionby anything, but that Aglionby was indebted to him in a sum in excess of the rent to become due; that the other likewise claimed that Aglionby was not entitled to collect any rent from him for the reason that he had promised to build a fence to protect certain crops which the tenant had upon the place, and which, because of Aglionby's refusal to furnish the material for said fence, were lost, and that his damages on this account were in excess of the rent. Whether these contentions of the tenants were correct or not, we cannot say. Aglionby contends that he was not indebted to either of them, and that as to the claim for damages for failure to build the fence he says that he directed the tenant where to get the material for it, but the tenant claimed that when he applied to this source for the material he was refused upon the ground that Alglionby was such slow pay that the hardware merchant who was requested to furnish the material declined to extend credit to him. It is hardly necessary to go into all of the contradictory and conflicting statements made by the witnesses in regard to these matters. When these claims for rent were assigned to the plaintiffs they owed a duty to collect them, and if they failed to collect them and Aglionby lost anything by their failure to exercise due diligence they would be responsible for the loss, and he would be entitled to credit therefor upon his indebtedness. It does not appear from the record the amount that either of the tenants was to pay as rent, and Aglionby, when called upon to furnish a statement of the same, always delayed doing so, and never did advise the plaintiffs how much his tenants, or either of them, owed on account of rent, so that they were not able to bring any suit to collect the same, and it is pertinent to notice that even now Aglionby does not say how much either of these parties was to pay him as rent, or how much either of them was due him at the time he made the assignment.

It appears that in 1903 these parties were solvent, and Aglionby then knew that the plaintiffs had only collected fifty dollars from one and twenty-five dollars from the other, and were contending that he was entitled to no more than this as a credit upon his notes. If more was due him than these amounts, he was then in a position to sue and collect it, so that it may be said that the failure of the plaintiffs to prosecute suits for the collection of these rents from these two tenants was due to Aglionby's failure to furnish any definite data or information upon which to base such suits; and further, that he was in nowise damaged by their failure in this regard, because at the time the plaintiffs refused to further prosecute the collection of the rents the parties were entirely solvent, and he could have collected the same had there been any amounts remaining unpaid.

As to the amount due from Neel, as before stated, this was settled by Aglionby himself by taking Neel's bond for $275.00. The plaintiff Getzendanner says that Aglionby asked him not to press Neel because he was a preacher, and that he, Aglionby, would make the settlement with him. Aglionby denies this, but the fact is undisputed that he did make the settlement with him and take the bond for $275.00, and turn it over to the plaintiffs. There was a loss of about $100.00 on this bond, and Aglionby insists that the plaintiffs should bear it, for the reason that they could have made it out of Neel by distraining for the rent. There is nothing, however, in the record, to show that a distress warrant for rent would have been availing. It does not appear what, if any, property Neel had upon the premises. Of course, we might assume that he had some, but whether it was anything in excess of the amount which he is permitted to claim exempt under the laws of this state, we do not know, and we cannot compel the plaintiffs in this case to allow a credit unless it appears that their negligence resulted in loss to Aglionby.

This disposes of all the questions arising in the case, and results in a reversal of the decree of the circuit court. We will enter a decree here finding that there is still due upon the debt secured by the deed of trust the sum of $1199.44, with interest thereon from the 1st day of March, 1919, the date of the commissioner's report, and that said deed of trust is a security for the

payment of this amount, and remand the cause to the circuit court in order that said amount may be collected by a sale of the said real estate, either by the trustee in the deed of trust, or by a commissioner appointed by that court, as it may be advised is proper, with costs in this court and in the court below to the appellants.

*Reversed; decree for plaintiff.*