## PACE *v.* BANK OF THOMASVILLE.

1. Where a creditor receives promissory notes as collateral security for the payment of a debt due by the pledgor to the pledgee, for the purpose of applying the proceeds of the collateral notes to the payment of the debt, the pledgee is bound to use ordinary care and diligence in making such collection; and if, while in the possession of such

notes, which are solvent by reason of an indorsement on them, the pledgee permits the indorser to erase and withdraw his name as such indorser without the consent of the pledgor, thus rendering the notes insolvent, such act on the part of the pledgee will amount to a conversion of the collateral notes, for which it is liable to the pledgor in an amount which represents the actual damage which he has sustained by reason of such conversion.

2. The court erred in sustaining the general demurrer and in dismissing the petition.

No. 3412. MAY 16, 1923.

Equitable petition. Before Judge W. E. Thomas. Thomas superior court. May 30, 1922.

H. T. Pace brought an equitable petition against the Bank of Thomasville, hereinafter called the bank, and alleged substantially the following: The bank held a mortgage against certain property owned by the plaintiff, to secure an indebtedness of about $6,600. On September 1, 1919, plaintiff deposited with the bank as collateral security, to secure the payment of the notes secured by the mortgage, twenty-one notes of $225 each, all bearing interest from date at 8 per cent. The notes were to be collected by the bank and applied on the indebtedness secured by the mortgage. The notes fell due monthly, and each of them was signed by the Thomasville Cadillac Co., a partnership composed of W. S. Smith and Theodore Titus Jr. The notes had been paid down to where the principal sum due was $3100. W. S. Smith retired from the partnership. Some of the notes were past due. Plaintiff demanded that the notes be paid, or that new notes be given with security, or that the old notes be indorsed. Theodore Titus Jr. was anxious to obtain an extension of time. Plaintiff demanded new notes with security or an indorsement of the old notes, as a condition precedent to not suing immediately on the notes. Theodore Titus Jr. presented the matter to his father, Theodore Titus Sr., who, in consideration of the extension of time of payment of the notes, indorsed all of them. The notes were in the possession of the bank as collateral security prior to, and at the time of, and after the indorsement by Theodore Titus Sr., and are still in its possession. After the notes were indorsed by Theodore Titus Sr., prior to October 11, 1920, the bank delivered the notes to Theodore Titus Sr., without the consent or knowledge of plaintiff, and Theodore Titus Sr. erased his indorsement from each of the notes, which erasures were made with the knowledge and con-

sent of the bank and without the knowledge and consent of plaintiff; and after erasing his indorsement from the notes Theodore Titus Sr. returned them to the bank in their changed condition and they were accepted and held by the bank in such changed condition. The bank failed and refused to credit plaintiff's indebtedness with the amount of the notes, to wit, $3,100, and interest thereon. The bank can not return to plaintiff the collateral security which he placed with the bank, and it should be required to credit plaintiff's indebtedness with the amount of the collateral. The notes without the indorsement of Theodore Titus Sr. are without value. On October 11, 1920, plaintiff tendered the bank the difference between the amount due by plaintiff to the bank and the amount of the collateral security which the bank had permitted " changed and ruined," and plaintiff stands ready and willing to pay the bank the difference. The consideration moving Theodore Titus Sr. to indorse the notes was the extension of time on all notes to ninety days, and most of said notes were not due, but only two of the notes were past due at this time. The bank released and discharged Theodore Titus Sr., as an indorser or surety on the notes, and did not afterwards attempt to enforce the collection of the notes against Titus; and it was negligent in these matters, and as a result totally destroyed the value of the notes. Theodore Titus Jr., W. S. Smith, and the Thomasville Cadillac Co. are each and all insolvent, and by virtue of the release and discharge of Theodore Titus Sr., by the bank, the notes were rendered totally worthless and without value in any amount. The plaintiff prays that the bank be required to account to plaintiff for the collateral which it received from plaintiff, and be required to credit the indebtedness of plaintiff with the amount of the collateral which the bank has destroyed; that plaintiff be allowed to pay the bank the difference between the value of the collateral with interest and the indebtedness of plaintiff to the bank; and that the bank be required, upon payment of the difference, to cancel of record the mortgage given by plaintiff to secure his indebtedness; and that judgment issue accordingly.

The defendant filed a demurrer upon two grounds: 1. Because the petition sets forth no cause of action. 2. Because there is a nonjoinder of parties, in that Theodore Titus Sr., the alleged

indorser, is not made a defendant to the suit. The court sustained the demurrer, and the plaintiff excepted.

*T. S. Hawes,* for plaintiff.

*Titus & Dekle* and *Branch & Snow,* for defendant.

HILL, J. (After stating the foregoing facts.)

1. The court below only passed upon the general demurrer, sustaining it and dismissing the petition. In so doing we are of the opinion that the court erred. The petition alleges that the notes deposited with the bank as collateral security without the indorsement of Theodore Titus Sr. were without value, and that Theodore Titus Sr., who indorsed the notes, did so in consideration that the notes signed by the Thomasville Cadillac Co., a firm composed of Theodore Titus Jr. and W. S. Smith, would be extended for ninety days. It was further alleged that the Bank of Thomasville released and discharged Theodore Titus Sr. as indorser or surety on the notes, without the consent of plaintiff; and that it did not, after the release, attempt to enforce and collect the notes against Theodore Titus Sr. and as a result of its action in permitting Theodore Titus Sr. to erase his name as indorser on the notes, totally destroyed their value, and that by virtue of the release and discharge by the bank the collateral notes were rendered totally worthless and without value. Taking these allegations to be true, this amounted to a conversion by the bank of the notes, and under the allegations of the petition the plaintiff is entitled to collect an amount which represents the actual damage which the plaintiff has sustained by such conversion. *Citizens Bank of Madison* v. *Shaw,* 132 *Ga.* 771 (65 S. E. 81). In the above-cited case this court held:

" If a creditor receives promissory notes under an agreement to collect them and apply the proceeds to the payment of the debt, he is bound to use ordinary care and diligence in making such collection; and if any loss should happen to the pledgor by reason of a want of such care and diligence, the law will compel the pledgee to make good the loss so resulting. . . If promissory notes are deposited with a creditor under an agreement of the character indicated in the preceding headnote, and they are converted by the creditor, this does not conclusively entitle the debtor to a credit of the face value of the collateral, but to an amount which represents the actual damage which he had sus-

tained by such conversion. . . If promissory notes are converted, and damages are claimed on account thereof, the amount of principal and interest at the time of conversion appearing from the notes themselves to be owing and unpaid, and the interest upon that aggregate from thence to the trial, is prima facie the measure of damages, if the person setting them up is entitled to full recovery of the value of the notes. The converter has the right to show, in reduction, the fact of payment in whole or in part, the inability of the makers to pay wholly or partially, a release of the makers from their undertaking, the invalidity of the notes, or other matter which will legitimately affect and diminish their value." We are of the opinion that where a creditor has notes in its possession, of the character set out in the petition, as collateral security for a debt due it by the pledgor, and the notes are indorsed by one whose indorsement renders them solvent, and where the pledgee permits the indorser to erase or withdraw his indorsement from the notes without the consent of the pledgor, thus rendering the notes insolvent, such action on the part of the pledgee amounts to a conversion of the notes, just as much so as if it should sell the notes and receive the value in money therefor.

There is equity in the petition. The plaintiff seeks not only to have the bank required to credit on his indebtedness the value of the property converted, but he offers to pay the bank the difference, if any, between the value of the collateral with interest and his indebtedness to the bank; and he seeks further to have canceled the record of the mortgage given by him to secure the indebtedness to the bank, etc. The plaintiff is not required to wait until the bank brings suit on the indebtedness, which it may delay for years, but he has the right to bring the present action and have his rights determined in a court of equity, as prayed. Whether Theodore Titus Sr. is a necessary party to such a proceeding as the present, is not involved in this case, as the court only passed upon the general demurrer. For the reasons set out above the court erred in dismissing the petition.

*Judgment reversed. All the Justices concur.*

RUSSELL, C. J., and GILBERT, J., concur specially.