[No. 16872.   Department One.   July 19, 1923.]

# NATIONAL BANK OF COMMERCE OF SEATTLE, *Respondent,* v. C. M. PETTIBONE, *Appellant.*[1]

EVIDENCE (146)—PAROL EVIDENCE TO VARY WRITING—COLLATERAL LOAN AGREEMENT. A writing pledging collateral to a bank to secure advances cannot be varied by parol evidence that it applied to only one transaction, when it declared that it shall apply to all dealings heretofore or hereafter had with the bank, and that no provision shall be deemed waived unless in writing and signed by the bank.

PRINCIPAL AND AGENT (49, 52-1)—LIABILITIES OF AGENT TO THIRD PERSON—UNDISCLOSED AGENCY—LIABILITY OF AGENT. One signing a note as sole trader, pledging collateral to a bank, and receiving shipments of canned salmon as consignee and endorsing the same and the notes of the fish company made payable to him personally, is, as to the bank, a principal upon the note and collateral agreement, even if he was an agent in his relations to the fish company.

PLEDGES (8, 13)—CARE OF PROPERTY—DILIGENCE—ENFORCEMENT—RIGHTS OF PLEDGEE. Under an agreement whereby canned salmon was pledged to a bank to secure advances, the bank is only required to exercise due and ordinary diligence in caring for and in reducing the collateral delivered to it; which it may do before maturity of the advances, where the collateral agreement so provides.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered March 9, 1921, in favor of the plaintiff, in an action on a promissory note, tried to the court.   Affirmed.

*Chadwick, McMicken, Ramsey & Rupp* and *C. R. Hovey,* for appellant.

*Kerr, McCord & Ivey,* for respondent.

HOLCOMB, J.—Respondent sued appellant, a sole trader, upon a certain promissory note executed by him to respondent for the sum of $4,900, dated January 14, 1920, due thirty days after date, with interest at seven per cent per annum, for a balance alleged to be due thereon of $2,881.27, and accrued interest.

[1]Reported in 217 Pac. 505.

Appellant answered upon the ground that, although the note was given by him to respondent, it was given for and on behalf of the Sanitary Fish Company, for which he acted as broker for the sale of canned salmon, which fact was known to respondent, and that respondent was negligent and did not act in good faith and with due diligence in taking care of shipments of canned salmon assigned to it as collateral, to eastern markets, and in reducing the collateral delivered to it for its security for any balance due, before maturity.

By cross-complaint, appellant demanded judgment for the difference between the value of the collateral as represented by the canned salmon and the amount due respondent, alleged to be the sum of $1,416, with interest from February 14, 1920.

The trial court found that a certain collateral loan agreement applied to the transaction between the parties, and gave judgment for the deficiency arising from the failure of the sale of the fish to realize the full amount due upon the notes, the judgment granting $3,071.84, with interest, and the sum of $300 attorney's fees, and ordered the sale of the two notes of the Sanitary Fish Company, $4,900 each, held by respondent as collateral security to the notes executed by appellant. The collateral agreement executed by the parties, dated June 25, 1919, was received in evidence by the court, but is not in the record. It is, however, in the brief of respondent, the body of the agreement being set out in full, and is not contradicted by appellant in any way. We assume it is the collateral agreement entered into between the parties. It is as follows:

"In order to obtain loans from and otherwise deal with the National Bank of Commerce of Seattle, the undersigned agrees that all loans, advances or credits hereafter or heretofore obtained from said bank by the undersigned shall be payable by the undersigned at

said bank on demand, unless otherwise agreed in writing at the time, and shall bear interest at rates to be agreed upon; and the undersigned, for value received, hereby assigns to the National Bank of Commerce of Seattle, as security for any and all indebtedness, obligation of liability of the undersigned to said bank, now or hereafter existing, matured or not matured, absolute or contingent, individual or firm, and wherever payable, including in addition to other indebtedness, obligation and liability, all such as may arise from endorsement of notes, acceptances or any other items or papers discounted by said bank or held by said bank, either absolutely or as collateral security to any loans or advances of any sort whatever and including overdrafts and indebtedness by the undersigned to said bank on account of collections or paper received for collection by the undersigned, the following, viz.: All moneys, chattels, negotiable instruments, securities, bills of lading, warehouse receipts, policies of insurance, paper, credits, demands, choses in action, rights and property of every kind, tangible or intangible, at any time in possession or control of said bank or any of its agents or correspondents, or in transit to it by mail or carrier, belonging to, for account or subject to the order of the undersigned, it being understood and agreed that the said The National Bank of Commerce of Seattle, its successors or assigns, are not to be held responsible for any injury or loss to the same or any part thereof arising from the act of God, fire, flood, or from negligence, fraud or any other act or default of warehousemen or common carriers, their agents or servants, or from any other cause whatever, whether similar or dissimilar to the causes specified; and that said bank, its successors or assigns, shall not be liable for any negligence, act or default of any of its collecting agents or correspondents; and the undersigned hereby irrevocably authorizes the said The National Bank of Commerce of Seattle, at any and all times at its option to hold and collect any and all thereof, and the proceeds thereof, to endorse any thereof on behalf of and in the name of the under-

signed, to sell without advertisement or notice any part or all thereof at private or public sale, at the option of said bank (said bank being at liberty to become the purchaser if the sale is public), and to apply any and all said property or proceeds thereof, and also any and all debts, liabilities or balances in favor of the undersigned (including such as arise from deposits, discounts, collections or items in transit), now or hereafter owing or due from or chargeable against said bank or any of its agents or correspondents, to the payment of expenses of any such sale or sales or the negotiation or collection of said collaterals, and to the payment of any or all of said indebtedness, obligation or liability of the undersigned at the option of the officers of said bank, whether said indebtedness, obligation, or liability to which the same is applied be then matured or not. Said bank may assign or transfer the whole or any part of said indebtedness, obligation or liability of the undersigned, and may transfer therewith, as collateral security therefor, the whole or any part of the chattels, instruments, securities, papers, credits, demands, choses in action, rights and property hereby assigned to said bank, and the transferee shall have the same rights, powers and authority with reference to the indebtedness, obligation or liability transferred and the collaterals transferred therewith as are hereby given to said bank, and said bank and its officers shall thereafter be forever relieved and fully discharged from any liability or responsibility in the matter. This instrument shall irrevocably apply to all dealings and transactions heretofore or hereafter had with said bank, unless the undersigned and said bank shall otherwise expressly agree in writing signed by the undersigned and said bank, and no provision of this instrument shall be deemed to be waived by said bank unless said waiver is in writing and signed by said bank or its duly authorized agent.

"In case of insolvency or failure in the business of the undersigned, all liabilities of the undersigned or any of them, to said bank shall forthwith become due and payable, without demand or notice, and said bank

is hereby authorized to appropriate and apply to the payment of any obligations or liabilities of the undersigned, whether now existing, or hereafter contracted, any funds on deposit or otherwise, to the credit of, or belonging to the undersigned, whether such obligations be then due or not.

"In case any suit or action is begun by said bank or any transferee to recover any sum of money on any such indebtedness, obligation or liability, either under this instrument or otherwise, the undersigned promises to pay a reasonable sum as attorneys' fees in such suit or action, and such attorneys' fees shall be deemed an obligation secured by this pledge, and further agrees that at the option of the holder hereof, the venue of any such suit may be laid in King county, Washington.

"The undersigned hereby expressly waives protest, demand and notice of non-payment of all negotiable instruments at any time held by said bank and signed or endorsed by the undersigned."

Appellant contended at the trial that this collateral agreement was entered into between the parties to apply only to one transaction. Over the objection of respondent, testimony to that effect was introduced, but the trial court either did not give credence to the testimony, or held, as he properly should have held, that the evidence was incompetent to contradict or vary the terms of a written agreement. This is so obvious from our well established and well recognized rule since the early case of *Marsh v. Wade,* 1 Wash. 538, 20 Pac. 578, that it is unnecessary to cite additional authorities.

It will be observed that the collateral agreement above set forth provides, among other things,

"This instrument shall irrevocably apply to all dealings and transactions heretofore or hereafter had with said bank, unless the undersigned and said bank shall otherwise expressly agree in writing signed by the undersigned and said bank, and no provision of this in-

strument shall be deemed to be waived by said bank unless said waiver is in writing and signed by said bank or its duly authorized agent."

No such written waiver or stipulation as contemplated in the above provision was shown in this case. It must, therefore, be held that the transactions in question were covered by the above very broad and far-reaching agreement.

It is also contended by appellant that Pettibone was a mere agent of the Sanitary Fish Company, and known by respondent to be such, and, therefore, this transaction should have been excepted from the provisions of the collateral agreement.

It was another just such transaction that gave rise to the execution by the parties of the foregoing agreement. However, Pettibone, whatever he may have been in relation to the Sanitary Fish Company, in relation to the bank was a principal. He gave his note as principal and sole maker. He received shipments of canned salmon as a consignee. He endorsed all the instruments relating to the shipments himself. He endorsed the notes of the Sanitary Fish Company, which were payable to him personally, as collateral. In fact, in every respect as to the respondent, he was the principal and not an agent.

As to the diligence and good faith of respondent in handling the salmon as collateral, the evidence shows that it acted with the utmost good faith and due and ordinary diligence. Due and ordinary diligence was all that was required under such circumstances. *Muhlenberg v. Tacoma,* 25 Wash. 36, 64 Pac. 925.

The collateral agreement set forth herein provided, in effect, that respondent should have the right to reduce all collaterals to possession and dispose of the same before maturity of any indebtedness to it. Hence there is no merit in the contention that the bank had

no right to reduce such collateral to possession and dispose of the same before maturity of the indebtedness due from appellant to respondent.

The judgment is right and is affirmed.

MAIN, C. J., BRIDGES, MACKINTOSH, and MITCHELL, JJ., concur.