ROCK ISLAND PLOW CO., Respondent, *v.* CUT BANK IMPLEMENT CO. et al., Appellants.

(No. 7,445.)

(Submitted December 5, 1935.   Decided December 23, 1935.)

[53 Pac. (2d) 116.]

*Mr. S. J. Rigney,* for Appellants, submitted a brief and argued the cause orally.

*Mr. Henry McClernan,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The defendants, the Cut Bank Implement Company, a copartnership consisting of Alfred Klein and Edward Murphy, and the copartners individually, have appealed from a judgment and decree of foreclosure entered against them and in favor of the plaintiff, the Rock Island Plow Company, a corporation.

The record discloses that prior to 1924 the defendants were indebted to the predecessor of the plaintiff, the Northern Rock Island Plow Company, in excess of $19,000, and had turned over to the creditor certain notes of a face value of approximately $16,000 as "collateral security" for the debt. On February 4, 1924, the debtor and creditor entered into a contract in writing whereby the indebtedness was reduced to $12,500, on conditions expressed, evidenced by six notes for $2,083.33 each, bearing interest at six per cent. and providing for an attorney's fee of ten per cent. in case of suit. As security for the payment of these notes the defendants executed and delivered to the creditor a mortgage on three lots in Cut Bank on which their business establishment was located. These mortgage notes were made payable on the successive dates of November 15 and January 1, after date, the last falling due on November 15, 1927. Only the first of this series of notes having been paid in full, on April 21, 1934, the plaintiff, as assignee and holder thereof, brought action to recover on the five remaining notes and for the foreclosure of the mortgage, and, alleging the inadequacy of the security to satisfy the judgment, petitioned for the appointment of a receiver to take charge of the property and collect rent from a lessee of a building on one of the lots. No mention is made in the complaint of the collateral held at the time the notes and mortgage were executed. The complaint alleges that the defendants have not

paid the notes in suit, or any part thereof, except certain payments set up as made in the years 1930 and 1931.

On the filing of the complaint the court issued an order to show cause why a receiver should not be appointed, and, after a hearing on the order, appointed a receiver on May 23, 1934. No appeal was taken from the order appointing the receiver.

On July 1, 1934, the defendants answered admitting the execution and delivery of the notes and mortgage, but denying indebtedness and denying the allegation of payments made on the notes. The answer then sets up a number of special defenses, without separately stating and numbering them, as follows: That three of the notes in suit, maturing, respectively, on January 1, 1925, November 15, 1925, and January 1, 1926, "are outlawed under the provisions of section 9029 of the Revised Codes for the year 1921, as this action was not commenced within eight years from the maturity date," and that the defendants, and no one on their behalf, have ever made a payment thereon, either voluntary or otherwise, within the eight-year period; that the defendants delivered "approximately $14,000" worth of collateral to the plaintiff under promise that the plaintiff would use its best efforts to collect the collateral and thereby retire the notes in suit, and to keep the collateral notes alive by renewals, judgment, or otherwise, or, failing to do so, would return the collateral to the defendants within sufficient time to permit them to keep the notes alive; that no part of the collateral has been returned nor have the defendants been advised of collections made; nor have they received any credit for sums collected; and that it was the duty of the plaintiff "to exhaust the collateral and apply the same on the said notes set out in the complaint before resorting to the security set out in the complaint." It is further alleged that, by failure to discharge the duties enumerated, the plaintiff has been guilty of gross negligence and laches to the damage of the defendants in the sum of $14,000, with interest for more than ten years "and is estopped thereby from maintaining this action"; and that the obligation in suit has been "paid in full" by the delivery of the collateral notes and con-

tracts, it being alleged that such notes were secured by mortgages and conditional sale contracts.

By reply the plaintiff alleges payments on specific dates, within eight years of the commencement of the action, on each of the notes in suit, made by the defendants, and sets up divers letters received within such period acknowledging the debt, and denies generally the allegations of the answer.

The cause was tried to the court, which, in disposing of the matter, made specific findings, closing with the general finding that ''all of the allegations contained in plaintiff's complaint and amended reply are true and correct, and all of the allegations contained in the answer of the defendants  *  *  *  are untrue or unsupported by competent evidence.'' The findings were followed by conclusions of law to the effect that none of the notes and no part of the debt were barred by the statute of limitations and that the plaintiff was not guilty of laches nor estopped from enforcing its demands, and that the plaintiff was entitled to a judgment for the amounts found due and to a decree of foreclosure. Judgment and decree followed.

The defendants have made numerous assignments of error raising the questions hereinafter discussed. It is first asserted that the court erred in appointing the receiver. The proceedings for such appointment were had preliminary to, and inpendent of, the trial; the order then made is specifically declared to be an appealable order (subd. 2, sec. 9731, Rev. Codes 1921), and, as this court may, on appeal from the judgment, review any intermediate order, except one ''from which an appeal might have been taken'' (sec. 9750, Id.), we are without authority to consider this assignment. (*Great Falls Meat Co.* v. *Jenkins*, 33 Mont. 417, 84 Pac. 74; *Little Horn State Bank* v. *Gross*, 89 Mont. 472, 300 Pac. 277.)

It is contended that the court erred in depriving the defendants of the right of possession of the premises during the period of redemption. There is no merit in the contention; a mortgagor is entitled to such possession only when he occupies the premises ''as a home for himself and family.'' (Chap. 150, Laws of 1933.)

On the situation of the parties with reference to the "collateral": The delivery of the notes to the creditor for collection and application of the proceeds on the debt to which the notes are collateral security constitutes a pledge of the notes (*Averill Machinery Co.* v. *Bain,* 50 Mont. 512, 148 Pac. 334; *Savage Tire Sales Co.* v. *Stuart,* 61 Mont. 524, 203 Pac. 364), governed by the law applicable to a bailment for hire. Ordinary care only is required of such a bailee. (*Shropshire* v. *Sidebottom,* 30 Mont. 406, 76 Pac. 941.) Since the security so delivered is only collateral, the pledgee may waive it, and, without first exhausting the subject of the pledge, maintain an action for the recovery of the amount of the debt, without surrendering or tendering the pledged property, and it is not necessary that the judgment obtained in such action provide that the subject of the pledge be surrendered upon satisfaction thereof. (21 Cal. Jur. 358, and cases cited; *Gilleran* v. *Owens,* 184 App. Div. 209, 171 N. Y. Supp. 596.) However, the pledgee is in duty bound to exercise ordinary care in discharge of his trust, and if, through his negligence in this regard, commercial paper pledged becomes worthless, he, and not the pledgor, should stand the loss. (*City Bank* v. *Rieker,* 262 Pa. 28, 104 Atl. 804; *Robertson* v. *First Nat. Bank,* 67 Colo. 517, 186 Pac. 542; *National Bank* v. *Pettibone,* 125 Wash. 607, 217 Pac. 505; *Gray* v. *Hafale,* (Tex. Civ. App.) 273 S. W. 647; *Pace* v. *Bank of Thomasville,* 155 Ga. 585, 117 S. E. 741; *Menser* v. *Lea,* 176 Ky. 391, 195 S. W. 813; *Crume* v. *Brightwell,* 69 Ind. App. 404, 122 N. E. 230.)

It follows that, when the pledgee ignores the collateral and sues on the debt, if, through the neglect of the pledgee in this regard, the pledgor has suffered loss, he may set up his damages as a counterclaim or set-off to defeat the action or reduce the debt *pro tanto* (*C. I. Hudson & Co.* v. *Wood,* 183 Ky. 16, 208 S. W. 2; *Sonoma Valley Bank* v. *Hill,* 59 Cal. 107) ; and it has been held that where the statute of limitations has run against a note, it may be set off even though it is not known whether the maker would set up the statute as a defense, if sued (*Hawley Bros. Hardware Co.* v. *Brownstone,* 123 Cal. 643, 56 Pac. 468). If the pledgor would prevail, he must plead and prove the facts

constituting negligence and rendering the collateral worthless (*Crume* v. *Brightwell*, supra; *Gibson* v. *Aglionby*, 87 W. Va. 86, 104 S. E. 612; *Boyd's Admr.* v. *Farmers' Nat. Bank*, 24 Ky. Law Rep. 756, 69 S. W. 964; *First State Bank* v. *Cooper*, (Tex. Civ. App.) 179 S. W. 295), and also his damage, which would be the actual value of the collateral, rather than its face value. (See note, 32 Am. St. Rep. 726.) Negligence and loss may not be presumed from the mere fact that the collateral remains uncollected (*Reeves* v. *Plough*, 41 Ind. 204) ; rather the presumptions are that a person is innocent of wrong, that private transactions have been fair and regular, and that the ordinary course of business has been followed. (Subds. 1, 19 and 20, sec. 10606, Rev. Codes 1921.) These presumptions are, of course, rebuttable, but as they exist, the burden of overcoming them rests upon the party asserting the contrary and relying thereon to establish a counterclaim. (Secs. 9329, 10616, Rev. Codes 1921.)

If the foregoing requirements as to pleading are not met, the court is justified in ignoring the issue attempted to be raised (*Menser* v. *Lea*, supra; *Crume* v. *Brightwell*, supra), and, of course, that which must be pleaded must be proved, and, therefore, if the pleader fails in his proof of his necessary allegations, the court is likewise justified in ignoring the issue. Likewise the plea of payment is an affirmative defense which must be proved by the one asserting it. (*Bell* v. *Grimstad*, 82 Mont. 185, 266 Pac. 394.)

To meet the foregoing requirements, the defendants proved the delivery of notes aggregating something over $16,000, face value, for collection and application on the debt. Counsel in his brief states that all these notes were collectible, as they were all secured by mortgages or conditional sale contracts, but this declaration is not supported by the record; the only proof is as to the notes, with the introduction of a list thereof, showing merely the data from the face of each note with no reference to security. It was then shown that the notes were not turned back to the defendants, but there is no showing that they, with two or three exceptions, were collected, or that payments had or had not been made thereon. The plaintiff gave credits on the

several notes in suit totaling $1,277.37, and, as the defendants denied making payments other than as there may have been collections made, it is evident that certain of the collateral notes must have been collected in whole or in part. It is apparent that attempts were made to make collections; these attempts were made by a representative of the plaintiff with the assistance of the defendant Murphy, and from time to time the plaintiff advised defendants as to the condition of the collateral. As indicating that the defendants assisted in collecting the collateral notes and had something to do with keeping them alive, on May 12, 1927, they wrote the plaintiff: ''Regarding your letter to report on sales any collateral paper * * * the writer [Murphy] is going to work on this paper and we will send you the notes as fast as can get them renewed and fixed up and also any money we can get in either from notes or goods sold.''

The written agreement respecting the collateral mentions ''warehouse receipt or receipts, conditional sales contract or contracts,'' but does not indicate the number of such securities or that they were delivered as security for the collateral notes. Proof of the collection of two or three notes by the plaintiff, aggregating something like $600, was introduced, and it is claimed that the defendants should have this additional credit, but it was not shown that these credits were not included in the indorsements on the notes in suit which were deducted from the amount of the judgment. This constitutes practically all of the evidence on behalf of the defendants respecting the collateral, and it will be readily seen that it falls far short of the requirements of the law, above, warranting recovery on a counterclaim or set-off. Therein is found no proof of ''payment in full'' and no warrant for a finding that, by reason of negligence on the part of the plaintiff the defendants have suffered a loss with respect to the collateral notes, or that the plaintiff is estopped to deny the allegations of the answer.

With respect to the plea of the statute of limitations: Regardless of whether the credits indorsed on the notes in suit were shown to be such as would toll the statute of limitations, the court found that by a check given by the defendants and the

letter accompanying it, and by subsequent letters promising payment on the debt, the defendants had acknowledged the debt in writing within the eight-year period. The defendants contend that these writings refer, not to the debt in suit, but to indebtedness incurred subsequent to the giving of the notes and mortgage. Setting up this correspondence between the parties would unduly extend this opinion and would serve no good purpose. A sample of the statements made by defendants is their letter of December 8, 1927, in answer to a letter received, evidently demanding payment, in which Mr. Murphy stated: "We had good hopes this fall of making a good showing on our indebtedness and will yet if the weather breaks so that they can finish their threshing"; he then gives a list of six men, some of whom, at least, are makers of collateral notes held by the plaintiff, advising the plaintiff to write them and stating, "these fellows are threshed and should pay," adding: "P. S. The others I will go over and see if there are any it would help you by writing them." The record shows that plaintiff extended some credit to defendants after the agreement of 1924, but not to the extent to warrant a finding that the correspondence had reference only to indebtedness incurred subsequent to 1924.

The evidence as a whole on this subject warrants the court's finding that the statute of limitations had not run against any of the notes in suit at the time this action was commenced.

Judgment affirmed.

Mr. Chief Justice Sands and Associate Justices Stewart, Anderson and Morris concur.