HARDING v. HAGLER.

Opinion delivered January 30, 1928.

1. MORTGAGES—EFFECT OF REISSUANCE OF NOTE.—Under Crawford & Moses' Dig., § 7816 and § 7885, subd. 5, a negotiable instrument may be reacquired by the maker or one of the joint makers before maturity and reissued so as to carry the lien of a deed of trust or mortgage with it.

2. MORTGAGES—ACCELERATION CLAUSE.—The acceleration clause contained in notes and deed of trust is a privilege which the holder alone could exercise at its election, and on reacquisition of notes and deed by one of the joint makers after one of the notes was past due, the holder of the second lien could not assert the benefit of the acceleration clause to defeat the priority of the lien of the assignee as taking after maturity.

Appeal from Pulaski Chancery Court; *Frank H. Dodge*, Chancellor; reversed.

*Carmichael & Hendricks*, for appellant.

*Charles W. Mehaffy* and *John E. Miller*, for appellee.

McHANEY, J. On May 11, 1923, appellees sold to Clem A. Schaer lot one (1), block thirteen (13), Kimball's South Park Addition to the city of Little Rock, for a consideration of $12,000, $5,500 of which was in cash and $6,500 evidenced by one note signed by said Schaer, having an accelerating clause providing that the whole amount of the note might be declared due on failure to pay any installment of interest thereon. This note was secured by vendor's lien in the deed executed and delivered to Schaer. The cash payment made by Schaer was obtained from the Union Trust Company by the execution of ten notes by said Schaer and his wife, Ethel F. Schaer, nine for the sum of $100 each, and one for the sum of $5,100, all being dated May 11, 1923, the first of said $100 notes becoming due December 1, 1923, and one $100 note due each six months thereafter, and the note for $5,100 becoming due June 1, 1928, and all of said notes being secured by deed of trust on said property. These notes were identical in form, and all contained the following clause: "This is one of ten notes of even date aggregating $6,000, all equally secured and all of which

shall become payable at election of holder upon default in payment of principal or interest of any of them.''

The deed of trust executed by Mr. and Mrs. Schaer contained the following provisions:

"Said parties of the first part (Clem A. Schaer and Ethel F. Schaer) are justly indebted unto the said party of the third part (Union Trust Company) in the principal sum of $6,000, gold coin of the United States of America, being for a loan thereof made by the said party of the third part to the said parties of the first part, and payable according to the tenor and effect of the principal notes of Clem A. Schaer and Ethel F. Schaer." Also: "But, if default be made in the payment of said principal or interest notes, or any of them, or any renewals or extensions thereof, when the same may become due and payable, according to the tenor and effect thereof, * * * the whole of said indebtedness herein secured shall, at the election of the party of the third part, or the legal holder or holders of the indebtedness herein secured, become and be considered due and payable, as if due and payable according to the tenor thereof."

The lien retained in the deed from appellant to Schaer was waived in the face of the instrument in favor of the notes and deed of trust to the Union Trust Company in the sum of $6,000. The $5,100 note heretofore described had interest coupons attached thereto maturing every six months, and these coupons were signed only by Clem A. Schaer. The notes due December 1, 1923, and June 1, 1924, were duly paid. In October, 1924, Clem A. Schaer died. The note becoming due December 1, 1924, was not paid at maturity, but on December 11, 1924, Mrs. Schaer took up this note and all the remaining notes in the hands of the Union Trust Company, and it made the following indorsement on each of said notes:

"For value received, we hereby sell and assign to Ethel F. Schaer, or order, all our interest in the within bond and all our rights under the mortgage securing the

same, without recourse. Union Trust Company, agent, by E. J. Bodman.''

And on the same date the following indorsement was made on the margin of the record of the deed of trust securing said notes:

''Note of $100 due December 1, 1923, and note of $100 due June 1, 1924, having been paid, for value received the remaining notes, aggregating $5,800, together with the lien of this instrument and all rights hereunder, are hereby assigned to Ethel F. Schaer, without recourse. This 11th day of December, 1924. Union Trust Company, agent, by E. J. Bodman.''

Mrs. Schaer thereafter retained said notes until August 10, 1926, when she sold and assigned the same to appellants, J. C. Harding and L. J. Loeb, with similar indorsements on the notes and the margin of the record as had theretofore been made by the Union Trust Company. Interest on the note to appellees was paid by Clem A. Schaer in his lifetime, and, after his death, three installments of interest were paid, two by Joe Schaer, trustee, for Mrs. Clem Schaer, and one by Mrs. Schaer on December 7, 1925, being the last interest payment made. The interest installments due in 1926 not having been paid, appellees exercised the option in their note, declared the whole amount due and payable, and on February 21, 1927, brought suit to foreclose their lien for the whole amount of the note and accrued interest, making Mrs. Schaer and her children and appellants, Harding and Loeb, defendants to this action, in which they prayed a prior and paramount lien upon the property to the lien of Harding and Loeb, on the ground that the reacquisition of said notes by Mrs. Schaer from the Union Trust Company constituted a payment thereof, so far as their second lien was concerned. Appellants, Harding and Loeb, filed an answer and cross-complaint, setting up the facts heretofore stated relative to their acquisition of said paper; that they acquired same in good faith and due course, and that their lien was prior and paramount to the lien of appellees. Under the accelerating clause

contained in said notes they had declared the whole amount thereof due and payable, on which they prayed judgment for a first lien on said property. The court sustained the contention of appellees, entered a decree giving judgment to them for the full amount of their note and interest, and making same prior and paramount to the claim of appellants. It also gave judgment to the appellants for the amount of their notes, with interest, and decreed a foreclosure thereof subject to the lien of appellees. From this judgment against them Harding and Loeb have appealed.

The facts are undisputed, and are substantially as heretofore stated. The question for our determination is, first, whether, on the reacquisition of a negotiable instrument by one of the joint makers before maturity, he may, for a consideration, and before maturity, reissue it after it has become his property; and, second, whether, if such negotiable paper consists of a series of notes with an accelerating clause, providing that the holder may, at his election, declare all subsequent notes due if default be made in the payment of one, and one of such notes is past due at the time of reacquisition, the assignee of such notes from the maker takes them subject to the right of the holder of the second lien to plead payment thereof and thereby make the second lien become the first lien.

Relative to the first proposition, § 7885, C. &. M. Digest, subdivision 5, provides: "A negotiable instrument is discharged when the principal debtor becomes the holder of the instrument at or after maturity in his own right." There are four other subdivisions to this same section, but subdivision 5 is the only one applicable to the facts in this case. Mrs. Schaer was a joint maker of these notes, and therefore a principal debtor, and when she became the holder of any one of the notes in controversy, at or after maturity, under this section such notes were discharged. It will be seen from the facts heretofore stated that, at the time she reacquired these notes, one of the $100 notes was past due. It will also be seen that three other of such $100 notes became due in

her possession and before she reissued them. As to these notes there can be no question but what they are discharged. But, at the time she re-negotiated them, there were three of the $100 notes and one $5,100 note unmatured. The first subdivision of the section of the Digest to the effect that an instrument is discharged "by payment in due course by or on behalf of the principal debtor" does not apply because, as to these notes, it cannot be said that her act in having them assigned to her constituted payment, because it was not done in due course, for the reason that these notes were not yet due.

Section 7816, C. & M. Digest, being § 50 of the Negotiable Instrument Act, provides: "Where an instrument is negotiated back to a prior party, such party may, subject to the provisions of this act, reissue and further negotiate the same. But he is not entitled to enforce payment thereof against any intervening party to whom he is personally liable."

Construing this same section of the Negotiable Instrument Act, the Missouri Appellate Court, in the case of *Arthur* v. *Rosier,* 217 Mo. App. 382, 266 S. W. 737, a case exactly like this on the question now under consideration, except that the husband reacquired and reissued the note before maturity, said:

"The maker of a promissory note, who is *sui juris,* may, for a consideration, before maturity, reissue it after it has become his property, but he cannot enforce payment against any intervening party to whom he was personally liable. Section 836 R. S. 1919; *Sater* v. *Hunt,* 66 Mo. App. 527; *Curry* v. *Lofou,* Mo. App. 163, 113 S. W. 246. In view of the law authorizing the maker to reissue a note that has become his property after its first issue, we hold that Morris occupied the position of an original payee. All parties dealing with this note knew that it was originally secured by a trust deed on the Siloam Springs property."

The Supreme Court of Tennessee had the same question under consideration in the case of *Horn* v. *Nicholas,* 139 Tenn. 453, 201 S. W. 756, and, in construing this same

section of the Negotiable Instruments Law, quoted the English rule stated by Lord Abinger, C. B., in *Morley* v. *Culverwell,* 7 M. & W. 174, 151 Eng. Reprint 727, as follows:

"A bill is not properly paid and satisfied according to its tenor unless it be paid when it is due; and consequently if it be satisfied before it is due, by an arrangement between the drawer and acceptor, that does not prevent the acceptor from negotiating it."

Continuing, the court said:

"Mr. Daniel, in the last edition of his Negotiable Instruments (page 914), after quoting the language of the above decision, states that in the first edition he had stated the law to be in accord with the New York or minority rule, but that 'examination of the English authorities, and of the South Carolina case (*White* v. *Williams,* 8 S. C. 290, 28 Am. Rep. 294), has satisfied him of the error, and that the English view is correct.'

"This, we believe, is also the conception of bankers and men of commerce as to the rights of such parties; and it evidently was the one acted upon in the instant case. The doctrine admits of convenient results in practical operation, as the facts of this case manifest. The maker was permitted to keep alive the lien securing the note by being allowed to acquire for reissue; whereas, if the note were to be treated as paid, it would be necessary to create a new lien to secure a fresh note. The Negotiable Instruments Law, it appears, is framed to accord with this view."

The court then refers to § 119 (5) of the Negotiable Instruments Law, which is § 7885, C. & M. Digest, heretofore referred to, to the effect that "a negotiable instrument is discharged when the principal debtor becomes the holder of the instrument at or after maturity, in his own right," and said that this section indicates "that, by acquisition before maturity, a discharge, precluding re-negotiation, does not result." The court then quotes § 50 of the Negotiable Instruments Law, § 7816, C. & M. Digest, heretofore quoted, and says: "The privilege of

acquiring in negotiation and of reissuing is thus broadly in favor of any prior party. And by § 30 (7796, C. & M. Digest), an instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof.''

. We therefore conclude on this point that a negotiable instrument may be reacquired by the maker or one of the joint makers before maturity, and reissued so as to carry the lien of deed of trust or mortgage with it.

On the second proposition it will be noticed that all the notes and the deed of trust had an accelerating clause which provided in substance that, upon default in the payment of any note or the interest thereon, the whole amount then due and unpaid might, at the option of the holder, be declared due and payable. But for this provision in the notes, and/or deed of trust, no person could have declared them due and payable upon default in the payment of any one, not even the Union Trust Company. This was a privilege accorded the Union Trust Company, or the holder of the notes—any person to whom it might sell or assign them. It was a privilege accorded the holder of the notes by virtue of the contract between the makers and the Union Trust Company, personal to the holder. In other words, it was the privilege of a holder that he could exercise or not at his election, and he alone had the right to elect. It was not a privilege accorded the holder of the second lien, and there are no equities in the case that could extend the privilege to any one but the holder. The authorities cited by counsel for appellee on this question are correct propositions of law, but they are not applicable to this case, as they refer to defenses on the notes themselves in an action by an assignee or subsequent holder against the maker.

These authorities apply as between Mrs. Schaer and Harding and Loeb, but it is a defense available only to the maker or person primarily liable. Certainly the appellees in this case could not interpose a defense peculiarly applicable to Mrs. Schaer which she does not see

proper to interpose or make for herself. We therefore conclude that the fact that one of these notes was past due when Mrs. Schaer reacquired them, and that three others of them fell due in her hands, would not preclude her from re-negotiating the remainder of the notes to the appellants, which carried with them the lien of the deed of trust, and that it continued to be a first lien on ·the property.

The judgment of the chancery court is therefore reversed, and the cause is remanded with directions to enter a decree foreclosing the lien of appellants on the notes acquired by them before maturity, and declaring it a first lien on the property, and to decree a foreclosure on the note of appellee and declare it to be a second lien on the property. It is so ordered.

MEHAFFY, J., disqualified and not participating.