EDMUND T. JOY, APPELLANT, V. CHESTER R. BUCHANAN ET AL., APPELLEES.

FILED MAY 19, 1936. No. 29663.

*Mockett & Finkelstein,* for appellant.

*Boehmer & Boehmer, Perry Morton, Allen & Requartte, O. C. Wood* and *Lewis C. Westwood, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and FITZGERALD, District Judge.

CARTER, J.

This action was commenced to foreclose that part of a real estate mortgage given to secure three interest coupons of $100 each, subject to the balance due on the

original mortgage of $4,000. The trial court denied the plaintiff a decree of foreclosure thereon, and plaintiff appeals.

The record discloses that on June 11, 1928, Edmund T. Joy, the plaintiff herein, was the owner of certain lands in Lancaster county, and on that date he and his wife executed and delivered to the Federal Trust Company their promissory note and mortgage in the amount of $4,000, to which were attached ten coupon notes of $100 each, payable December 11 and June 11 of each year, commencing December 11, 1928. In addition to the mortgage, the Federal Trust Company took a supplemental agreement, made in contemplation of a sale of the mortgage by it, which provided that, in case the Federal Trust Company should be required to make any payments due under the note and mortgage, it should be subrogated to all the rights of the holder thereof, subject only to subsequently maturing payments. On June 28, 1928, the note and mortgage were assigned by the Federal Trust Company to the Union Fire Insurance Company and were, under the terms of a separate agreement, guaranteed by the Federal Trust Company.

On April 2, 1930, plaintiff conveyed the lands, subject to the mortgage, to Chester R. Buchanan who, as a part of the purchase price, assumed and agreed to pay the $4,000 note and mortgage and maturing interest. Chester R. Buchanan subsequently conveyed the lands to William W. Buchanan, guardian of John W. Buchanan, who failed to pay the three coupons involved in this suit. The Union Fire Insurance Company requested payment of the coupons as they became due from the Federal Trust Company, which in turn demanded payment from plaintiff.

The record shows that the first coupon involved herein became due on December 11, 1931, and it was paid by the Federal Trust Company with money provided by plaintiff's agent, R. S. Mockett. Mockett took a receipt for the money from the Federal Trust Company which stated that the money was for the payment of the coupon due December

11, 1931. On October 22, 1932, the Federal Trust Company assigned its interest in the coupon to plaintiff by a written assignment. On July 9, 1932, plaintiff took $100.78 to the Federal Trust Company which on the same day delivered the money to the Union Fire Insurance Company. On the same date, the coupon and a written assignment of the interest of the Federal Trust Company therein were delivered to plaintiff by the Federal Trust Company. On January 11, 1933, plaintiff took $100 to the Federal Trust Company which delivered it to the Union Fire Insurance Company on the same day and a receipt was taken for the interest payment due under the coupon maturing on December 11, 1932. The record does not show a written assignment of this coupon to the plaintiff. None of the three coupons was canceled or marked as paid. It is the contention of plaintiff that the Federal Trust Company was subrogated to the rights of the holder of the mortgage and that its rights inure to the benefit of plaintiff by virtue of the assignments.

The evidence shows that E. H. Wetencamp, one of the appellees, entered into a contract with Harding & Roe, real estate agents, for the purchase of this property. In making the purchase, Wetencamp made inquiry of the Union Fire Insurance Company as to the amount due on its mortgage and was informed that the principal note of $4,000 and two $100-coupons remained unpaid. Wetencamp testified that he had no actual knowledge that the three coupons upon which this suit was brought were not paid. It is not disputed, however, that the supplemental contract between plaintiff and the Federal Trust Company was recorded in the office of the register of deeds.

The evidence shows that the Federal Trust Company did not advance its own funds for the purchase of any of the interest coupons in question. All of the money paid by the Federal Trust Company to the Union Fire Insurance Company was the money of the plaintiff. The Federal Trust Company was therefore the agent of the plaintiff, and the payment of the money by it to the Union Fire Insurance

Company was equivalent to payment by the plaintiff. It cannot therefore be said that the Federal Trust Company, as agent for the plaintiff, could acquire any different interest in the coupons than could the plaintiff if he had personally paid the amount. We therefore conclude that any rights acquired by the Federal Trust Company were acquired by virtue of the agency rather than by virtue of its contract of guaranty with the Union Fire Insurance Company or the supplemental contract with plaintiff which has hereinbefore been described. This being true, the question is whether plaintiff, as maker of the notes and coupons, may purchase them, under the circumstances of this case, and be subrogated to the rights of the holder in the security.

The evidence in this case does not show an assignment of the coupons to the Federal Trust Company. The amount due on the coupons was paid, a receipt for payment taken and the uncanceled coupons delivered to the Federal Trust Company. In the absence of proof of an agreement to assign, payment of the coupons will be presumed. The rule applicable is well expressed in *Venner v. Farmers Loan & Trust Co.*, 90 Fed. 348, wherein the court said: "It is therefore a sound principle of law that the holder must intend a sale, and consent to a sale, and a mere transfer of title, when he parts with such preferred coupon, or the transaction will be treated as a cancelation and payment."

In *Ketchum v. Duncan*, 96 U. S. 659, the court, in a similar case, said: "It is undoubtedly true that it is essential to a sale that both parties should consent to it. We may admit, also, that 'where, as in this case, a sale, compared with payment, is prejudicial to the holder's interest, by continuing the burden of the coupons upon the common security, and lessening its value in reference to the principal debt, the intent to sell should be clearly proved.'"

To like effect is the holding in *First Trust Co. v. Ricketts*, 75 Fed. (2d) 309, and cases therein cited. We conclude therefore that the evidence fails to show an assignment of

the coupons but tends rather to show that they were extinguished and discharged by payment.

We are also of the opinion that the coupons in question were discharged within the meaning of the negotiable instruments law of Nebraska. It provides in part as follows: "A negotiable instrument is discharged: * * * Fifth. When the principal debtor becomes the holder of the instrument at or after maturity in his own right." Comp. St. 1929, sec. 62-801. Did not the plaintiff, as the principal debtor, become the holder of the instrument after maturity in his own right? We think he did.

In discussing this same section of the negotiable instruments law, the supreme court of Kansas said: "Whether we consider the transaction as one in which he furnished the money in the first instance to purchase the note through his agent, Wilson, or as one in which Wilson first purchased it with his own funds and subsequently, upon being reimbursed by defendant, transferred it to him, it would seem to be clear that the maker became the owner in his own right, unless there be some principle of law which forbids a debtor to purchase his own debt." *Sigler v. Sigler*, 98 Kan. 524, 158 Pac. 864, L. R. A. 1917A, 725.

In *Harding v. Hagler*, 176 Ark. 146, 3 S. W. (2d) 289, the court, in discussing the same section, said: "Relative to the first proposition, sec. 7885, C. & M. Digest, subdivision 5, provides: 'A negotiable instrument is discharged when the principal debtor becomes the holder of the instrument at or after maturity in his own right.' There are four other subdivisions to this same section, but subdivision 5 is the only one applicable to the facts in this case. Mrs. Schaer was a joint maker of these notes, and therefore a principal debtor, and when she became the holder of any one of the notes in controversy, at or after maturity, under this section such notes were discharged. It will be seen from the facts heretofore stated that, at the time she reacquired these notes, one of the $100 notes was past due. It will also be seen that three other of such $100 notes became due in her possession and before

she reissued them. As to these notes there can be no question but what they are discharged."

We therefore conclude that the trial court was right in denying the plaintiff a decree of foreclosure on the coupon notes in question and the judgment is therefore

AFFIRMED.