JENNIE S. GORDON, *Appellee*, v. LILLIE GORDON MUNN et al., *Appellants*.

No. 17,725.

OPINION DENYING A REHEARING.

SYLLABUS BY THE COURT.

1. REHEARING DENIED—*Statements in Opinion Modified.* Criticisms of the opinion (87 Kan. 624, 125 Pac. 1) in this case are considered, and certain statements therein modified.

2. ANTENUPTIAL CONTRACT — *Construction — Conveyance.* The antenuptial contract considered in this action should be construed according to the intention of the parties to be gathered from the entire instrument, the nature of the property to be conveyed, and the effect of the agreement in vesting the equitable title in the wife. So considered it is held that a conveyance by the husband was not indispensable to its enforcement in the circumstances disclosed by the evidence and findings.

Appeal from Shawnee district court. Opinion denying a rehearing filed November 9, 1912. Former de-

cision adhered to.    (For original opinion, see 87 Kan.
624, 125 Pac. 1.)

*James A. Troutman, D. R. Hite, Robert Stone, David
W. Mulvane, C. E. Gault,* and *George T. McDermott,* all
of Topeka, for the appellants.

*S. H. Allen, Otis S. Allen,* and *J. B. Larimer,* all of
Topeka, and *A. E. Crane,* of Holton, for the appellee.

The opinion of the court was delivered by

BENSON, J.:  A statement in the opinion that the
rents and profits of the property set apart to the wife
by the antenuptial contract had been absorbed by taxes
is challenged in a petition for rehearing.  On reëxamin-
ing the evidence it is found that although the taxes
upon one of the tracts exceeded the rent, the reverse
is true of the other parcel.  Concerning this subject the
appellee's brief contained the following :

"The North Topeka property produced a little in-
come and was worth in 1898 about $1800, but, at the
time of the death of Mr. Gordon, by reason of the flood
and the decay of the buildings it was worth $600 or
$800.  The 7⅙ acres never produced any revenue over
and above the amount of the taxes.  It was worth
$1000 to $1500 in 1898 and from $2500 to $2800 in
1908.  At the time of the death of Mr. Gordon the two
properties did not produce any net revenue whatever."

Elsewhere in the brief it is stated that the North
Topeka lot rented for about $8 per month.  It was also
stated that it was difficult and much of the time im-
possible to collect rent for the old house on this lot,
and there was some difficulty in collecting rents from
the barn.  One tenant was dispossessed for failure to
pay rent and another tenant was allowed a rebate for
ten months or a year for repairs made necessary by a
flood.  The tax upon the North Topeka lot for one of
the years was $27.67.  The evidence does not show the
exact amount of net revenue from both tracts.  The

statement referred to in the opinion appears to be too broad, but the surplus received from rents in excess of taxes, repairs and expenses was not so great as to affect the conclusion reached by the court.

Another statement in the opinion is criticised. It was said that:

"In many of the cases holding that such an agreement thus remaining unexecuted does not bar the widow's dower or inheritance, the inexperience of the wife, her want of adequate knowledge of the husband's property or other equitable considerations appear to have influenced the judgment." (*Gordon v. Munn*, 87 Kan. 624, 633, 125 Pac. 1.)

It is said that no case can be found supporting this statement. In *Sarah Woodward v. Benjamin Woodward et al.*, (5 Sneed) 37 Tenn. 49, cited by appellee, the statement of facts shows that the complainant was illiterate, that it was doubtful whether the paper was read to her, and that it was executed in great haste. The property to be transferred to the wife consisted of two slaves; such transfer was not made, and upon the death of the husband it was held that the widow might hold her legal rights in the estate of her husband notwithstanding the agreement, but the court said:

"The defendants, in this case, have not put themselves in an attitude, by filing a cross-bill, to ask a decree for specific execution of the agreement, if entitled to do so. But it is clear they have no such relief; the suspicions of unfairness which surround the execution of the paper, would repel them from a Court of Equity." (p. 56.)

In *Pierce v. Pierce*, 71 N. Y. 154, a case also relied upon by the appellee, a decision had been rendered by the supreme court of that state reported in 16 N. Y. Sup. Ct., 9 Hun, 50, holding that the wife was not bound by an antenuptial agreement of her husband to settle upon her a sum of money because he had failed to make the settlement in his lifetime. In reviewing

this decision the court of appeals of New York affirmed the judgment, for the reason, however, that the intended wife had been defrauded. No reference was made to the failure of the husband to complete the settlement as agreed. In *Slingerland v. Slingerland,* 115 Minn. 270, 132 N. W. 326, it appeared that the district court had held the antenuptial contract void because of in-adequacy of consideration and the failure of the hus-band to make the payment as agreed, but that it was not invalid by reason of any fraudulent representations or undue influence. It appeared that the husband was over sixty years of age and was a wealthy and success-ful business man. The wife was only 23 years old. Other circumstances affecting her situation were com-mented upon and it was held, contrary to the views of the trial court, that the contract should be set aside for fraud and undue influence, and the court added that "It is unnecessary to decide whether defendant's fail-ure to pay the $5000 is alone a ground for setting the contract aside." (p. 275.) These cases may serve to illustrate what was in the mind of the writer of the opinion in this case in making the statement now chal-lenged, and at least indicate the desire of courts to rest their decisions in such cases upon the ground of fraud rather than the default of one of the contracting parties. In *Russell v. Russell,* 129 Fed. 434, also cited by the appellee, the failure of the husband to per-form a promise made in the antenuptial contract was held to be in itself a fraud relating back and vitiating the agreement in which it was contained. This may not be solid ground, but it further illustrates the judicial effort to base decisions in such cases upon fraud if it appears, rather than upon failure to fulfill a promise. The statement quoted above may be regarded as elimi-nated. It was a mere passing remark, having but a remote bearing upon but not necessary to the decision.

Inadequacy or disproportion of the consideration to be given to the wife was pleaded in the sixth paragraph

of the reply. Attention was called to this feature of the case in a question submitted upon reargument, and it was fully treated in the briefs. This is believed to be a sufficient reason for the consideration given to it in the opinion of which complaint is now made.

It is suggested that the exclusion of evidence referred to in the sixth paragraph of the syllabus is not a ground of reversal because the proffered evidence was not set out in the motion for new trial. An examination of the opinion will disclose the fact that this evidence was considered because a new trial was ordered of the issue to which it related. It would be unfair to both parties to remain silent upon a matter of this nature where the same question is likely to be presented in another trial. It was fully argued in the briefs.

The vital question presented in the petition for rehearing is the effect of the failure of the husband to make the conveyance as agreed. Many authorities are again cited holding that such a failure is fatal and it is asserted that none can be found to the contrary. That such authorities upon the general proposition were not wanting was stated in the opinion, but it may be useful at this time to reëxamine some of them. In *Bliss v. Sheldon*, (N. Y. Supr. Ct.) 7 Barb. 152, a case frequently cited in later decisions, the agreement was to provide by last will for the widow an allowance of $50 each year during her natural life, together with a room in the dwelling house, household furniture and garden, in lieu of dower. The will afterwards made provided for the payment of an annuity, not for life as promised, but during widowhood only. The court said that "By disposing of the entire remainder of his property, he (the husband) rendered it impossible for his executors to perform it." (p. 156.) It is true that another ground for the decision was added, but the fact that the agree-

ment was impossible of performance is significant.    In the same case, reviewed in 8 N. Y. 31, the court said:

"The agreement was not performed by the testator, who not only omitted to make the provision contemplated by the contract for the respondent, but so disposed of his estate by his will as to place it beyond the power of his executors to make such provision, without departing from his instructions.    It is idle to talk of the wife being bound by an agreement which the husband in his lifetime virtually repudiated."    (p. 35.)

Thus it will be seen that the court of appeals rested its decision not alone upon nonperformance, but upon repudiation of the agreement by the husband as well as impossibility of performance by the executors.

In *Camden Mutual Insurance Association v. Jones*, 23 N. J. Eq. 171, the agreement provided for an annuity for the wife during widowhood.    The husband died insolvent.    The court said:

"It seems settled, both upon principle and by authority, that an ante-nuptial contract to release or not to claim dower, in consideration of an annuity or a provision out of personal property covenanted to be provided in lieu of it, will not bar the claim of dower if the provision on part of the husband fails.    (1 Greenl. Cruise, Tit. 6, Dower, ch. 4, § 17; *Hastings v. Dickenson*, 7 Mass. 153; *Gibson v. Gibson*, 15 Mass. 110.)"    (p. 173.)

In *Hastings v. Dickenson & Ux.*, cited by the New Jersey court, an annuity had been provided for in a marriage settlement in lieu of dower.    After holding that at common law and under an English statute in force in that commonwealth the provision made for the wife—not being a freehold—was not a bar to dower, the court said:

"As in this case the insolvency of the husband has deprived the widow of the contemplated annuity; if it were possible to consider this annuity as a freehold estate, yet within the equity of this statute, she ought to be admitted to her claim of dower, the consideration of her covenant having wholly failed."    (p. 155.)

The opinion in *Gibson v. Gibson & Al.,* 15 Mass. 106, was rendered upon a question of pleading and follows the Hastings case. In the course of that opinion it was said:

"From these principles it is manifest that, if the annuity has not been paid, and the security has failed, the demandant's covenants can not be set up, to rebut her claim of dower." (p. 112.)

It will be observed that in the New Jersey decision cited above it was said that the agreement will not bar dower if the provision for the wife fails, and in that case it failed entirely, because of the insolvency of the husband leaving nothing with which to pay the annuity. In *Butman & wife v. Porter, executor, & another,* 100 Mass. 337, a statute of Massachusetts required an antenuptial contract to be recorded. The record was not made although either party might have caused it to be done. The court held the agreement inoperative under the statute. The *Estate of Warner,* 158 Cal. 441, 111 Pac. 352, was a case arising upon an antenuptial contract wherein the intended husband agreed to support and educate the minor child of the wife, then less than twelve years of age. Almost immediately after the marriage the child was sent out to work for her living under conditions making it impossible for her to attend school. The decision was based upon the pleadings showing this fact, and it was held that the widow was not barred of her interest in the personal estate. It will be seen that this too is a case where performance was impossible; the education of the child having been neglected at the proper time, the opportunity ceased and the agreement could not be performed. *Brenner v. Gauch, Exr.,* 85 Ill. 368, *Phillips' Ex'rs v. Phillips,* 14 Ohio St. 308, and *Sullings & another v. Sullings,* 91 Mass. 234, are also cases where the intended husbands agreed to set apart personal property or pay money for the use of the wives, and may be distinguished from agreements to convey real estate which

vest an interest in the property. This distinction is suggested by a remark in *Earl of Buckinghamshire v. Drury,* (Eng.) 2 Eden, 60, referred to by Chancellor Walworth in *McCartee v. Teller,* 2 Paige's Ch. 511, 560:

"If there had been danger of Sir T. Drury's dissipating, and he had spent this equitable jointure, that would have been an eviction in equity, and consequently would have given her right to dower, like the case of an eviction at law; for equity pursues the reason of the law. 2dly, But he could not have spent it, *i. e.,* not his real estate." (p. 68.)

In *Sullings & another v. Sullings,* above cited, the contract between the prospective husband and wife recited that it was his desire and purpose that provision should be made for her maintenance "as far as may be beyond the casualties and contingencies to which men and business are exposed." (p. 237.) The widow's counsel said in argument: "The testator failed to perform his duties under the contract. All he did during the fifteen years' coverture was the first transfer of fifty shares, and that only after a delay of four years, exposing her all this time 'to the contingencies and casualties to which man and business are exposed,' and against which it was the express object of the instrument to guard." (p. 236.) The court said:

"The essence of the contract was, that certain amounts of property should be irrevocably devoted to her use, at times specifically designated, so as to guard them against accidents to her husband's fortune. She was subject to the danger of loss to some extent during the whole coverture; and for nearly four years had no security whatever. . . . True, she could now receive the whole amount to which she would have been entitled, if the contract had been performed; but she has been exposed to the whole risk which the contract was framed to avoid." (pp. 238, 239.)

The general rules relating to contracts for the sale of land are not deemed strictly applicable to this ques-

tion although the distinction has not always been observed in the adjudicated cases. In antenuptial contracts marriage is the principal consideration, and therefore a rescission of the agreement can not leave the parties *in statu quo.* (Note, 26 L. R. A., n. s., 858.) The annotator says that sound policy requires the enforcement of contracts entered into prior to and which induced the marriage, and that in the interpretation of covenants they will be construed as dependent or independent according to the intention of the parties and the good sense of the case; that this rule is enforced with more liberality as to covenants contained in marriage settlements which will be held independent rather than dependent unless the language of the contract requires a contrary holding. The case of *Lloyd v. Lloyd,* (Eng.) 2 Myl. & Cr. 192, is cited as authority that where the marriage has taken place a contract had been so far performed that the court must put some construction upon it to the extent which remained to be performed, and although in the case of an ordinary contract the party who would not perform might not be entitled to claim any benefit, it was different in marriage articles. This matter of dependent and independent covenants in agreements of this nature is very briefly referred to in *Buffington v. Buffington, Executor,* 151 Ind. 200, 51 N. E. 328. In that case the agreement contained a covenant on the part of the husband to make certain provisions for the wife's support, and the court said:

"The stipulation as to support was not a condition upon which the validity of the contract was made to depend, and the allegation of a breach would not support a claim of forfeiture." (p. 205.)

A similar conclusion was reached in *Metz, et al., v. Blackburn, et al.,* 9 Wyo. 481, 65 Pac. 857. It is said in 19 A. &. E. Encycl. of L. 1244:

"A party to a marriage settlement does not lose his right to the benefits thereby secured to him by the

failure to perform the covenants on his own part, where the marriage has taken place and performance on his part is not made a condition precedent to performance by the other party."

In *North v. Ansell,* (Eng.) 2 P. Wms. 618, the claim was interposed that the amount which the husband was to receive with the wife in consideration of the marriage had not been paid, but the court said:

"The reason why this court does not relieve against marriage contracts for settlements, jointures or other provisions, though they may be very unequal, and in favor of the wife, is, because it can not set the wife *in statu quo,* or unmarry the parties." (p. 619.)

To like effect is *Jeston v. Key,* (Eng.) 6 Chan. App. Cases, 610.

Without further considering the distinction between antenuptial agreements to pay money or transfer personal property and those providing for the conveyance of real estate, or the technical question whether the covenants here are mutual and dependent, our conclusion is based upon the proposition that the contract should be construed according to the intention of the parties to be gathered from the entire instrument, the nature of the property to be conveyed, and the effect of the agreement in vesting the equitable title in the wife. So considered it is held that a conveyance by the husband was not indispensable to its enforcement, in the circumstances disclosed by the evidence and findings and commented on in the opinion.

"We have frequently held that agreements of this character should be liberally construed to carry into effect the intention and purpose of the parties." (*Rouse v. Rouse,* 76 Kan. 311, 317, 91 Pac. 45; *Carr v. Lackland,* 112 Mo. 442, 20 S. W. 624; *Johnston v. Spicer et al.,* 107 N. Y. 185, 13 N. E. 753.) In the case last cited it was said that equity might impress a trust on the property to be conveyed.

The appellants have treated this particular issue as

6—88 KAN.

an action to rescind on the part of the appellee, while she has treated it as an action for specific performance on their part. In so considering it inconsistencies in the attitude and pleading of each party are pointed out by the other. We have considered the issue upon broader lines and endeavored to determine the substantial rights of the parties upon principles of equity, whether the case is treated as attempted rescission or for specific performance. Failing in their contention that the marriage was illegal, the appellants have nothing to urge against the validity of the agreement and ask that it be enforced. They hold the naked legal title, and if the other issue to be tried again shall be decided in their favor they may be adjudged to make a conveyance to the appellee and a complete title may be vested in her by the decree. This will obviate her objection made in the petition for a rehearing that another suit will be necessary to secure the legal title. If the appellee should be successful upon such trial the contract will be out of the case.

The petition for a rehearing is denied.