ANDERSON, APPELLANT, v. BORDER ET AL., RESPONDENTS.

(No. 6,560.)

(Submitted January 22, 1930. Decided February 15, 1930.)

[285 Pac. 174.]

Messrs. *Belden & DeKalb, Mr. Merle C. Groene* and *Mr. Oscar O. Mueller,* for Appellant, submitted a brief; *Mr. H. Leonard DeKalb* argued the cause orally.

Messrs. *Murphy & Whitlock, Mr. William M. Blackford* and *Mr. Roy E. Ayers,* for Respondents, submitted a brief; *Mr. A. N. Whitlock* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is the second appeal in this case, the first having been determined by an opinion which appears in 75 Mont. 516, 244 Pac. 494. The action is upon a promissory note, dated March 28, 1918, payable six months after date, executed by Fergus County Co-operative Association, hereafter referred to as the maker, to Empire Bank & Trust Company. When the note was delivered to the payee, it had upon its back the names of the answering defendants and six others. Thereafter, but before its maturity, the plaintiff wrote his name upon the back thereof.

As will appear from the opinion mentioned above, in his original complaint the plaintiff sued the defendants upon the theory that, in order to secure an extension of time for the payment of the note, the defendant secured the plaintiff to sign the note as a surety and as a guarantor, and he alleged that on or about the second day of January, 1919, he paid the amount of the note to the maker, who thereupon indorsed, delivered and transferred it to plaintiff. After the case went back for a new trial, plaintiff amended his complaint; he no longer alleges that he signed the note as a surety and guarantor, but avers that on or about the fifteenth day of September, 1918, the defendants secured him to place his name on the note by representations that thereby the payee would carry the note without demanding payment thereof until the same could be paid out of the assets of the Fergus County Co-operative Association; that as plaintiff is informed no extension was granted, and therefore the signature of plaintiff was without any consideration whatsoever; that on or about the second day of January, 1919, he purchased the note from the maker after the interest had been paid to that date and the note had been reduced to the sum of $10,000.

Two of the defendants, Holmes and Hawley, answered separately. Holmes admitted the execution of the note by the maker and the indorsement thereof by plaintiff, but denied its

purchase by plaintiff or that plaintiff is the holder thereof, and pleaded four separate defenses. The first is to the effect that, when the note was executed, the maker had certain branch co-operative associations located at different points in Fergus county, and that defendant was manager of the Benchland branch; that plaintiff at the time of the execution of the note was an officer of the maker and as such knew of the making and delivery of the note and was present at the time of the execution and delivery thereof; that at that time it was mutually agreed between plaintiff and defendant, as well as the other individual defendants, that they should indorse the note not in their individual capacities but as representatives of such branch associations; and that the name of the defendant was not placed upon the note with the intention of assuming any individual responsibility but with the express agreement, to which plaintiff was a party, and upon the express condition precedent, that he was acting only as the representative of the branch elevator at Benchland, and that no individual liability was or should be assumed by or imposed upon him. (Compare original answer, 75 Mont. 516–519, 244 Pac. 494, 496.)

It is conceded that the second defense was not substantiated, and further reference need not be made to it.

In the third defense it is alleged that the plaintiff, acting as an officer and representative of the maker, paid the note and discharged it.

The fourth defense covers much the same ground as the first. In addition, defendant alleges that the note was never negotiated prior to January 2, 1919; that plaintiff at that time paid the same because of his liability as an indorser; that he never purchased or became the owner thereof, and therefore is precluded from recovery thereon.

Defendant Hawley's answer is similar to that of Holmes. Hawley alleges he was manager of the branch elevator at Kolin. In addition, Hawley set up a counterclaim for the recovery of certain sums paid by him upon the judgment which plaintiff had obtained against the defendants, which was reversed, the

payments being made while the appeal was pending. Hawley alleges that the payments were made under compulsion and after the issuance of an execution upon the judgment.

Plaintiff denied the affirmative defenses of Holmes and Hawley, and as to the latter's counterclaim alleged that the payments made to him by Hawley were voluntary.

Having heard the evidence of the respective parties, the court made findings of fact to the effect that the note was taken up from the bank by the plaintiff after he had received notice that, if it was not paid, suit would be instituted thereon; that at the time he took up the note he paid thereon the sum of $10,000, and at the same time the manager of the maker paid the sum of $340.85, reducing it to $10,000; that the defendants indorsed the notes as representatives of their respective associations, and not individually, under an agreement of the defendants, and plaintiff's indorsement thereon was pursuant to an agreement with defendants.

The court concluded that the plaintiff did not purchase the note, but took it up by payment by himself of $10,000 and the further payment by the maker of $340.85, which was the amount due on the note when it was taken up; that the plaintiff at the time suit was commenced was not a holder in due course and took the note after maturity subject to the defenses set out in the answer of defendants; that the defendant Hawley is entitled to recover the amount paid by him on the judgment, together with interest; that the plaintiff is not entitled to recover anything in the action, and the defendants are entitled to their costs. Judgment was entered accordingly, from which the plaintiff appealed.

The greater portion of appellant's exhaustive brief is devoted to an attempt to demonstrate that our former opinion in this case is erroneous, but the short answer is that as to all points which were directly involved in, and were passed upon, in the former appeal, and which are involved in this case, whether the opinion is right or wrong, it is the law of the case, was binding upon the trial court, and is binding upon us.

(*Carlson* v. *Northern Pacific Ry. Co.*, 86 Mont. 78, 281 Pac. 913.)

Treating the note in suit as negotiable, defendants were irregular or anomalous indorsers before delivery. Plaintiff was a like indorser after delivery. He was, if we take the allegations of the last complaint for it, an accommodation indorser. It is conceded that defendants and plaintiff alike were liable to the payee. Plaintiff obtained the note from the payee after its maturity.· He claims he purchased it, but the court found otherwise. There is testimony in the record tending to show that, when defendants signed, plaintiff agreed that he also would sign. While plaintiff denies he was president of the maker, the fact is that he was elected its president, and at times acted as such. The maker owed him some $7,000, and naturally he was anxious to collect it. It is reasonable to suppose that he thought it would be to his advantage to postpone the day of reckoning upon the note. Anyhow he signed it. There is no doubt that demand for payment was made upon him and the payee threatened to sue him. Thereupon plaintiff and the manager of the maker paid the amounts due upon the note, as set forth in the court's findings. The payee then indorsed the note in blank, without recourse.

Whatever else may be said, it seems certain that plaintiff, ▊▊▊ except for his liability thereon, would not have taken up the note. Payment of a note will be presumed from possession, after maturity, by a person liable for the payment thereof. (8 C. J. 1014.) In the decision of this case, plaintiff's possession after maturity may be deemed but a circumstance; the controlling feature with us is that the court found plaintiff paid the note because of his liability as an indorser, and that he did not purchase it. This finding upon conflicting evidence we cannot disturb; however, we think the evidence as a whole preponderates in its favor.

But, if it were not so, we likewise would be precluded from disturbing the finding that plaintiff took the note subject to· the defenses interposed by defendants, for, after a careful analysis of the testimony, we are satisfied there is ample testi-

mony to sustain the trial court's finding on this issue. Remarkable to relate, this case has been tried twice in the district court upon the hypothesis that this suit is based upon a negotiable promissory note; it was presented and decided upon that theory in this court when the case was here before, and it has likewise been presented by opposing counsel upon this appeal. The note contains the provision, "if the undersigned shall become insolvent * * * before maturity hereof this note may at the holder's option become immediately due and collectible." It is therefore non-negotiable. (*Great Falls Nat. Bank* v. *Young*, 67 Mont. 328, 215 Pac. 651; *Newer* v. *First Nat. Bank*, 74 Mont. 549, 241 Pac. 613.)

We are not disposed to decide this case upon a theory different from that adopted and so long followed by the parties, that the note is negotiable; but, if we were, the law as laid down in our former opinion with respect to an agreement between irregular or anomalous indorsers of a negotiable note, is the law with respect to "indorsers" of a non-negotiable note. (*Young* v. *Sehon*, 53 W. Va. 127, 97 Am. St. Rep. 970, 62 L. R. A. 499, 44 S. E. 136; *Saussy* v. *Weeks*, 122 Ga. 70, 49 S. E. 809; and see generally, 8 C. J. 57–59.)

The first judgment in the action was rendered February 25, 1925, upon which an execution was taken out and placed in the hands of the sheriff of Judith Basin county, who was instructed by the attorney for plaintiff to levy upon the defendant Hawley's real estate and personal property. The sheriff did as directed. There can be no doubt that Hawley would not have paid the plaintiff anything upon the judgment but for the execution and levy. As illustrative, Hawley said: "Anderson, or his attorney, under the execution had me hogtied. I did not have any money to pay my taxes or any money to meet the land payment, or. any seed wheat. The sheriff came down there and tied up everything I had personally. I was without funds at the time and had no property that I could dispose of after the execution. The sheriff, or someone representing the sheriff, was actually in charge and possession of my personal property after the levy. * * * If the execution

had not been levied I would not have paid the money to the plaintiff or made any agreement with him to turn it over to him.''

The payment of a judgment on execution is not voluntary ██ and does not operate as a waiver of the right to restitution. A person under such circumstances is not required to submit to seizure or distress of his property to preserve his right to compel restitution. And, when the judgment is reversed, it is then a nullity, and the matter stands as if no judgment had ever been rendered. (21 R. C. L. 162; *Ure* v. *Ure*, 223 Ill. 454, 114 Am. St. Rep. 336, 79 N. E. 158.)

"The sheriff was armed with a writ of execution, and by force of it he had seized property owned by Coker; and obviously payment by Coker was compulsory. It is likewise manifest that payment by Bellamy to prevent the carrying out of the threat of seizure was compulsory; and so say the authorities. (*Duniway* v. *Cellars-Murton Co.*, 92 Or. 113, 170 Pac. 298, 179 Pac. 561; *Knox County Bank* v. *Doty*, 9 Ohio St. 505, 75 Am. Dec. 479; *Kaiser* v. *Barron*, 153 Cal. 474, 95 Pac. 879; *First Nat. Bank of Sturgis* v. *Watkins*, 21 Mich. 483; *Hiler* v. *Hiler*, 35 Ohio St. 645; *Chambliss* v. *Haas*, 125 Iowa, 484, 3 Ann. Cas. 16, 68 L. R. A. 126, 101 N. W. 153.)'' (*Coker* v. *Richey*, 108 Or. 479, 217 Pac. 638, 639.)

Moreover, payment made on execution is not a voluntary payment, even though there has been no seizure of the property of the one who makes the payment. (*Kaiser* v. *Barron*, supra; *Scholey* v. *Halsey*, 72 N. Y. 578.)

"The right to recover what one has lost by the enforcement of a judgment subsequently reversed is well established. And, while the subject of the controversy and the parties are before the court, it has jurisdiction to enforce restitution and so far as possible to correct what has been wrongfully done.'' (*Baltimore & Ohio R. Co.* v. *United States*, 279 U. S. 781, 73 L. Ed. 954, 49 Sup. Ct. Rep. 492, 493. Compare sec. 9752, Rev. Codes 1921.)

Independently of statutory provisions for the restitution on motion of money paid on execution based on a judgment subse-

**12**

quently reversed or set aside, the right thereto has long been recognized as a rule of the common law, and may be enforced in an independent action. The law implies a promise to restore it to the party from whom it was exacted. (*Chambliss* v. *Haas*, supra.)

"Where money is wrongfully and illegally exacted, it is received without any legal right or authority to receive it; and the law, at the very time of payment, creates the obligation to refund it." (*Bank of United States* v. *Bank of Washington,* 6 Pet. (U. S.) 8, 8 L. Ed. 299.)

The judgment must be and is affirmed.

ASSOCIATE JUSTICES MATTHEWS, GALEN, FORD and ANGSTMAN concur.