JEANNE D. OLSON, as Executrix of the Estate of J. D. KENNEDY, Deceased, Plaintiff and Respondent, *v.* GEORGE McLEAN, Defendant and Appellant.

No. 9439.
Submitted May 16, 1957. Decided July 25, 1957.
Rehearing Denied August 19, 1957
313 Pac. (2d) 1039.

112

Mr. J. B. C. Knight and Mr. Wade J. Dahood, Anaconda, for appellant.

Mr. Edwin T. Irvine, Philipsburg, and Messrs. Keeley & McElwain and Mr. Robert P. Ryan, Deer Lodge, for respondent.

Mr. Dahood and Mr. Ryan argued orally.

MR. JUSTICE CASTLES:

This is an appeal from a judgment on a verdict for plaintiff in a retrial of an action for money had and received. Defendant is the appellant, plaintiff the respondent. The judgment is affirmed.

Plaintiff sues as administratrix of her father's estate. Among his papers plaintiff found a canceled $1,100 check made out to defendant as an automobile purchase loan, but nothing to substantiate payment. Defendant admitted the loan, avowed payment, but produced no receipt. He insisted that he had returned the $1,100 in cash, in amounts of $800 and $300, and $20 interest, within six weeks. Defendant signed 'no writing. No interest rate is shown.

When plaintiff found no deposit to her father's checking account specifically substantiating defendant's story of payment, she filed this suit. The first jury could not agree. On retrial the next jury found for plaintiff. The parties and the defendant's witnesses were all known within the community where the two trials were had.

Plaintiff's position throughout was that she had become familiar with her father's manner of keeping loan records; understood that he treated the records of his checking account as his "loan ledger"; and had observed that he habitually

checked out the exact amount of money for each loan and meticulously deposited it back, also marking the deposit ticket with the name of the debtor who had repaid the money, and any interest. Therefore, plaintiff insisted that since no specific deposit credit and no deposit ticket confirmed the return of the money, the debt had never been paid. Defendant did not dispute plaintiff's testimony as to her father's method of conducting his business.

Plaintiff's case rested entirely upon her own unimpeached testimony and upon her father's canceled check to defendant, the deposit tickets and the bank statements of her father's checking account. Plaintiff offered testimony of conversations with her father concerning the loan, but the court refused this evidence. Defendant and his three witnesses all swore the title certificate to the automobile had been taken in pledge by plaintiff's father when the loan was made and had been returned to defendant at the time the final loan repayment had been received. The date inserted in the transfer section of the title certificate indicated defendant had signed it as owner on the day the loan was made. At the first trial, defendant said he paid for the car in cash, but at the second trial he said he paid for the car by check. Defendant testified he *"sent"* the certificate in for title transfer. The date he gave was eight months after the loan was made and some six weeks after plaintiff's father died. In rebuttal, plaintiff produced an employee of the registrar of motor vehicles, in charge of used car title transfers, who testified the defendant *brought* the title in person. Defendant did not question this rebuttal witness.

Plaintiff's cross-examination of defendant's witnesses developed that defendant had previously been convicted of a felony; also that the three witnesses corroborating defendant's story of payment were, respectively, a fellow saloonkeeper, a regular customer with a charge account, and a first cousin. All were repeatedly impeached. When pressed with inconsistencies between testimony just given and a reply to a similar question

at the prior trial, defendant's first corroborating witness lamely answered, "What do I say now?"

On appeal, defendant has taken the position that because the plaintiff volunteered testimony of nonpayment, plaintiff was obliged to make out a *prima facie* case of nonpayment, but failed, and therefore that the defendant's motion for nonsuit should have been granted. From this assumption, defendant proceeds to argue that the verdict for the plaintiff is "conjecture, speculation, suspicion and specious reasoning  *  *  * strained and feeble reasoning" resulting from "an inference based upon an inference."

Defendant's five specifications of error include the two points above and three assertions that plaintiff's exhibits from her father's checking account records are mere unproven copies, neither original entries nor first permanent records, and not made in the regular course of business. On these latter assertions, defendant argues that the admission of plaintiff's exhibits worked prejudicial error in violation of the best evidence rule.

This appeal involves application of the Uniform Business Records as Evidence Act, of which the Oregon Supreme Court has said: "One of the purposes of the  *  *  *  Act is to enlarge the operation of the business records exception to the hearsay evidence rule.  *  *  *  The court passes upon the admissibility of the records and the jury passes upon their weight." Douglas Creditors Ass'n v. Padelford, 181 Or. 345, 351, 353, 182 Pac. (2d 390, 393, 394.

The Montana act, approved February 25, 1937, and now appearing as R.C.M. 1947, sections 93-801-1 through 93-801-4, has been discussed by this court in McGrath v. Dubs, 127 Mont. 101 at page 112, 257 Pac. (2d) 899. See 9 U.L.A. pages 385, 394.

In considering the defendant's appeal, we recognize generally that verdicts on conflicting evidence are not disturbed on appeal; who the jury believes is for the jury. Kinna v. Horn, 1 Mont. 597; Wallace v. Wallace, 85 Mont. 492, 279 Pac. 374, 377, 66 A.L.R. 587; and R.C.M. 1947, section 93-401-4.

As was said in the Wallace case, supra: "Where the evi-

dence is conflicting, but substantial evidence appears in the record to support the judgment, the judgment will not be disturbed on appeal, and this is especially true when the court, as here, has passed upon the sufficiency of the evidence on motion for a directed verdict and motion for a new trial and upheld its sufficiency.''

The question is posed then, did the plaintiff make out a ▉ *prima facie* case and, specifically, when payment is interposed as a defense, who has the burden of proof?

To support her allegations, plaintiff testified to nonpayment. From this defendant contends that plaintiff assumed the burden of proving nonpayment. Such is not our law although, if it were, the jury's verdict would affirm that the burden has been met. Payment is an affirmative defense, to be specifically pleaded and preponderately proved. "* * * where the defense is payment, the burden rests upon the defendant to establish it by competent evidence.'' Bell v. Grimstad, 82 Mont. 185, 195, 266 Pac. 394, 397. See, also, Power v. Gum, 6 Mont. 5, 9 Pac. 575; Vesel v. Polich Trading Co., 96 Mont. 118, 28 Pac. (2d) 858; Rock Island Plow Co. v. Cut Bank Implement Co., 101 Mont. 117, 53 Pac. (2d) 116; McCaslin v. Willis, 197 Miss. 366, 19 So. (2d) 751, 156 A.L.R. 770, annotation at page 787. Thus it follows that plaintiff did make out a *prima facie* case, that the trial court committed no error in denying defendant's motion for nonsuit and that the verdict is not against the weight of the evidence.

As was said by this court in Hill v. Frank, 118 Mont. 11, 25, 164 Pac. (2d) 1003, 1009 : ''By a long line of decisions this court is committed to the rule that we 'will not overturn the findings of the trial court unless there is a decided preponderance of the evidence against them * * * and, when the evidence, fully considered, furnishes reasonable grounds for different conclusions, the findings will not be disturbed'. Allen v. Petrick, 69 Mont. 373, 222 Pac. 451, 452 * * *''

Defendant urges the presumption of payment arising from ▉ his possession of the title certificate to the automobile,

citing section 93-1301-7, R.C.M. 1947, which reads in part: "All other presumptions are satisfactory, if uncontradicted. They are denominated disputable presumptions, and may be controverted by other evidence. The following are of that kind: * * *

"8. That a thing delivered by one to another belonged to the latter.

"9. *That an obligation delivered up to the debtor has been paid.* * * *

"11. That things which a person possesses are owned by him." Emphasis supplied.

Defendant's obligation was never evidenced by any writing, such as a promissory note. If his testimony may be believed, the title certificate was first surrendered as evidence of a pledge and then returned as evidence of payment. The jury did not so believe. This was a material issue in the case. In Anderson v. Border, 87 Mont. 4, 9, 285 Pac. 174, 176, this court said: "Payment of a note will be presumed from possession, after maturity, by a person liable for the payment thereof. 8 C.J. 1014. In the decision of this case, plaintiff's possession after maturity may be deemed but a circumstance * * *"

This presumption, from possession of the obligation, assuming for the purpose of this discussion that the certificate of car title was evidence of the "obligation," is but a statutory declaration of the common law. It is discussed at length by the Oregon court in Dencer v. Jory, 131 Or. 653, 284 Pac. 163, annotated in 70 A.L.R. 859. Anderson v. Border, supra, is included. The annotation is supplemented in 156 A.L.R. 777, 787, where it is said on the question of burden of proof: "* * * the author of the original annotation [70 A.L.R. 859] observed that undoubtedly the true rule, and the one intended in all the cases, is that the burden of showing payment or discharge remains on the obligor throughout the case, but that his possession of the obligation creates a prima facie case of payment or discharge, and the burden of going forward with evidence to overcome that prima facie case, * * * shifts to plaintiff."

We think the controlling Montana rule was stated by this ▆ court in Durocher v. Myers, 84 Mont. 225, at page 237, 274 Pac. 1062, at page 1067, as follows: "Whether any substantial evidence has been introduced by the plaintiff becomes a question of law for the court on demurrer to the evidence by motion for nonsuit or for a directed verdict \* \* \*, no case should be taken from the jury \* \* \* when reasonable men may draw different conclusions from the evidence, or where there is substantial evidence to support the complaint, but only where from the undisputed facts the conclusion necessarily follows, as a matter of law, that a recovery cannot be had on any view which may reasonably be taken from the facts established (Bell v. Grimstad, 82 Mont. 185, 266 Pac. 394)." See, also, Lewis v. Bowman, 113 Mont. 68, 79, 121 Pac. (2d) 162; Jones on Evidence, 4th ed., section 70, pages 126, 127, section 104, page 180, section 176, pages 311 and 312. Under this rule we do not deem it proper to disturb the jury's verdict.

Next we shall consider the defendant's three assignments of ▆ error upon the admission of plaintiff's exhibits from her father's bank records, whereby defendant interprets the jury's verdict as "an inference based upon an inference."

Under our statutory definitions, an inference is a deduction which the reason of the jury makes *without* legal compulsion, from the facts proved. A presumption is a deduction which *the law directs* the jury to make upon the facts proved. Both proceed from facts. They differ in compulsion. R.C.M. 1947, sections 93-1301 through 93-1301-3; Wibaux Realty Co. v. Northern Pacific Ry. Co., 101 Mont. 126, 132, 54 Pac. (2d) 1175. While "it has been broadly asserted in many decisions that inferences cannot be founded on inferences \* \* \* no rule of law \* \* \* forbids the resting of one inference *on facts* whose determination is the result of other inferences." 31 C.J.S. Evidence, section 116, pages 728, 729, 730. Emphasis supplied.

This evidential problem is not to be solved by the niceties of logic, but by the established exceptions to the rule, forbidding the admission of hearsay testimony.

Time and justice have necessitated exceptions to the hearsay rule. The prohibition of hearsay has been progressively limited as mechanical record keeping has increased. The exception which concerns us here began with the admission of shopbooks and comparable regular business entries and has advanced to include loose-leaf ledger systems, microfilm, recordaks, and similar ingenuities of the mechanized world. What once through human error, was properly excluded as hearsay has now, through mechanized precision, become the best evidence. The Uniform Business Records as Evidence Act so confirms. See 9 U.L.A. 385, and 1956 pocket part, page 278. The principle stands but the form advances.

"It has long been a settled rule of law both in England and in this country that a minute or memorandum in writing, made at the time when the fact it records took place, by a person since deceased, in the ordinary course of his business, corroborated by other circumstances which render it probable that the fact occurred, is admissible in evidence." Jones on Evidence, 4th ed., Hearsay, section 319, pages 593, 594.

"Likewise, entries made in regular course of business by one who has since died or who, though living, is not available as a witness, or by the clerk or agent of such a person, may, under a rule of necessity, be proven under a well-settled exception to hearsay rule." Jones on Evidence, 4th ed., section 567, page 1071.

"* * * legislatures have very generally enacted laws under which business records and contemporaneous entries * * are admissible." Ibid, section 567a, page 1073. See, also, Wigmore on Evidence, 3d ed., vol. 5, section 1519, page 351, and section 1520, pages 361 to 366.

Applying these principles to the facts at hand, if as plaintiff's uncontroverted testimony asserts and as the jury's verdict confirms, plaintiff's father chose to treat the records made for him at his bank as his books of account, what better record, short of a specific promissory note or like writing can be found? Plaintiff's familiarity with her father's records and way of do-

ing business stands undisputed. So far as amount and date of deposit confirm payment, plaintiff's exhibits are equally to defendant's advantage. Exhibit No. 2, a ledger sheet, shows a deposit of almost double defendant's first claimed $800 payment five days after defendant insisted the $800 was paid. Plaintiff's Exhibit No. 5, another ledger sheet, shows a deposit in excess of defendant's claimed second payment, entered the day after defendant claims the $300 final payment was made with the $20 interest. Unfortunately for defendant, plaintiff's fourth and sixth exhibits, both deposit tickets, show notations relating these credits to "Flint Creek Lodge Number 11, Note and Interest" and to "Charles G. Hoover 6 months interest to September 3, 1948. Note dated March 3, 1948," neither could have been the defendant.

Under present banking practices, duplicate deposit tickets, canceled checks and duplicate ledger sheets, *all prepared by a bank,* are no longer fallible hand copies but original entries, mechanically transcribed as first permanent records in a regular course of business. They are facts from which as here, the inference of payment or nonpayment may be deduced by a jury. For all practical purposes they have today become best evidence. Remembering that the admission or rejection of such exhibits must necessarily lie within the sound discretion of the trial judge, this court would be archaic indeed should it deny a gentle judicial notice to the passing of the spindle file, the letter compress, the office stool and the buckskin poke. See, also, R.C.M. 1947, section 5-1051, enacted as chapter 77, Session Laws of 1951 permitting photocopies and other mechanized bank records as evidence.

"* * * the court passes upon the admissibility of the records and the jury upon their weight * * * considerable discretionary power is vested in the trial court in determining whether the sources of information and the method and time of preparation were such as to justify the admission of the record * * * a ruling thereon by the court should not be disturbed except in the case of manifest abuse of discretion

\* \* \*'' Quoted from Annotation to Reinecke v. Mitchell, 54 N.M. 268, 221 Pac. (2d) 563, 21 A.L.R. (2d) 770, at page 777. Case turned on admission of carbon copies of weight slips for hauled hay. Sustained.

The federal government and at least half of the states have the Uniform Business Records As Evidence Act. The Montana statute has been effective since February 25, 1937, enacted second only to New York.

As is stated in 20 Am. Jur., Evidence, section 1062, page 908: "Indeed, under the system of bookkeeping in modern business houses, the mechanical precision with which numerous employees record various transactions, together with the absence of any personal motive to misrepresent the facts of the transaction, makes the modern book of accounts a very high form of evidence \* \* \*.''

We find no abuse of discretion, and no prejudicial error during the trial. Judgment of the lower court is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICE ANGSTMAN, concur.

MR. JUSTICES BOTTOMLY and ADAIR, concur in the result but not in all that is said in the foregoing opinion.